1

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                  **FOR THE EASTERN DISTRICT OF CALIFORNIA**

8

| | |
|---|---|
| **IRIGARAY DAIRY, CHARLES VAN DER KOOI DAIRY, HENRY JONGSMA & SON DAIRY , and COW-WEST NORTH STAR DAIRY,**<br><br>**Plaintiffs,**<br><br>**vs.**<br><br>**DAIRY EMPLOYEES UNION LOCAL NO. 17 CHRISTIAN LABOR ASSOCIATION OF THE UNIDED STATE OF AMERICA PENSION TRUST, and BOARD OF TRUSTEES OF THE DAIRY EMPLOYEES UNION LOCAL NO. 17 CHRISTIAN LABOR ASSOCIATION OF THE UNITED STATES OF AMERICA PENSION TRUST,**<br><br>**Defendants.** | **1:13-cv-1112 AWI MJS**<br><br><br>**MEMORANUDM OPINION AND ORDER ON DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT.**<br><br>**Doc. # 6** |

This is an action for declaratory relief and damages by plaintiffs Irigary Dairy, Charles Van Der Kooi Dairy, Jongsma & Son Dairy and Cow-west North Star Dairy ("Plaintiffs") against defendants Dairy Employees Union Local No. 17 Christian Labor Association of the United States of America Pension Trust (the "Pension Trust") and the Board of Trustees of the Pension Trust ("Pension Board") (collectively, "Defendants"). Plaintiffs' complaint seeks a declaration of rights and responsibilities regarding Defendants assessment of "withdrawal penalty payments" against plaintiffs pursuant to section 515 of the federal Employees

Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1145.  In addition, Plaintiffs seek damages against Defendants pursuant to California's Unfair Competition Law, California Business and Professions Code section 17200.  Federal subject matter jurisdiction exists pursuant to 28 U.S.C. § 1331.  Venue is proper in this court.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

The complaint in this action states that Plaintiffs are each dairies whose principal place of business is California.  It is not disputed that defendant Pension Fund is "an employee benefit plan within the meaning of Section 3(2) and 3(3) of ERISA, 29 U.S.C. § 1002(2) and (3), and is maintained for the purpose of providing retirement and related benefits to eligible participants.  The Pension Fund is also a multiemployer pension plan within the meaning of Section 1002(37) of ERISA, 29 U.S.C. § 1002(37)."  Doc. # 1 at 2:17-23.  It is also not disputed that the "employees at issue are agricultural employees as defined under the Fair Labor Standards Act," Doc. # 1 at 3:13-14, and who are therefore not covered under the National Labor Relations Act but are covered under California's Agricultural Labor Relations Act, California Labor Code, section 1140 et seq.

The crux of Plaintiff's complaint is that the putative Collective Bargaining ("CBA") agreement under which contributions to the Pension Fund were required was void because the Pension Fund was not certified by the California Agricultural Labor Relations Board.  Plaintiffs also contend in their complaint that the void nature of the CBA relieves them of the terms of an arbitration agreement that "unfairly shifts the costs of arbitration, win or lose, on employers."  Doc. # 1 at 4:19-20.  Plaintiffs' claim under California's UCL is predicated on the court's determination that Defendants' attempt to recover withdrawal liability payments and to enforce the terms of an unconscionable arbitration clause under the authority of void CBA's is unlawful.

Plaintiff's complaint was filed on August 18, 2013.  Defendants' motion to dismiss was filed on August 19, 2013.  Plaintiffs' opposition was filed on September 9, 2013 and Defendants' reply was filed on September 16, 2013.  The hearing for oral argument on

Defendants' motion to dismiss, scheduled for September 23, 2013, was vacated by order of the court and the matter was taken under submission as of September 23, 2013.

**LEGAL STANDARD**

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure can be based on the failure to allege a cognizable legal theory or the failure to allege sufficient facts under a cognizable legal theory.  Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir.1984).  To withstand a motion to dismiss pursuant to Rule 12(b)(6), a complaint must set forth factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) ("Twombly").  While a court considering a motion to dismiss must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), and must construe the pleading in the light most favorable to the party opposing the motion, and resolve factual disputes in the pleader's favor, Jenkins v. McKeithen, 395 U.S. 411, 421, reh'g denied, 396 U.S. 869 (1969), the allegations must be factual in nature.  See Twombly, 550 U.S. at 555 ("a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do").  The pleading standard set by Rule 8 of the Federal Rules of Civil Procedure "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) ("Iqbal").

The Ninth Circuit follows the methodological approach set forth in Iqbal for the assessment of a plaintiff's complaint:

> "[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."

Moss v. U.S. Secret Service, 572 F.3d 962, 970 (9th Cir. 2009) (quoting Iqbal, 129 S.Ct. at 1950).

**DISCUSSION**

At the outset, it is important to recognize that resolution of this action involves the consideration of the validity of two distinct sets of employers' obligations.  One set of obligations is imposed by the Collective Bargaining Agreement ("CBA") between the Plaintiff Dairies and their workers.  The other set of obligations is imposed on Plaintiffs through the agreement governing participation in the multi-employer Pension Plan administered by Defendants.  Both of the obligations that are the subject of this action – the requirement that Plaintiffs make payment to the Pension Plan or be subject to penalties and the collective bargaining agreement -- are imposed by the second of these two agreements.  The first of these obligations requires monthly contributions by Plaintiffs to the Plan fund; the second requires Plaintiffs to submit disputes arising under the Plan to arbitration under conditions that require Plaintiffs to pay the Plan's share of the arbitration costs if the Plan prevails in the arbitration dispute and requires Plaintiffs to pay their own share of the arbitration expense win or lose.  The question before the court, as framed by Plaintiffs, is to what extent, if any, are the Plaintiffs obligated under the second of these two obligations if the first of the obligations – those arising under the CBA – are found void or voidable?

As noted above, there is no dispute that Plaintiffs' workers are agricultural workers and that as such, they are excluded from the provisions of the National Labor Relations Act ("NLRA") and the procedures necessary to select a union for purposes of representation, including collective bargaining, are determined by California's Agricultural Labor Relations Act ("ALRA").  The methods by which workers may select an agent or union for labor relations and collective bargaining purposes differ between the NLRA and the ALRA in two significant respects.  First, an agricultural employer may not recognize or bargain "with any labor organization not certified pursuant to the provisions of this part."  Cal. Lab. Code § 1153(f).  The second difference is that the selection process set forth by California Labor Code section 1156, et seq. requires that a bargaining representative "be designated only on the basis of a secret representation election, and not by the presentation of union authorization cards or any other less

-4-

reliable method sanctioned under federal law." <u>Highland Ranch v. Agricultural Labor Relations Bd</u>, 29 Cal.3d 848, 859 (1981); <u>see</u> <u>Freitas v. Food Packers, Processors & Warehousemen Local 865</u>, 164 Cal.App.3d 1210, 1216 (2nd Dist. 1985) (explaining policy purpose of ALRA is to prohibit employer "sweetheart deals").

Plaintiffs allege and Defendants do not dispute that Defendant Dairy Employees Union Local No. 17 Labor Association of the United States of America was not a labor association certified by the California Agricultural Labor Relations Board ("ALRB") during the time relevant to this action.  Plaintiffs also allege Defendant was never certified as the collective bargaining agent of any of the Plaintiff dairies.  Two pieces of information are absent from Plaintiffs complaint.  First, Plaintiffs never allege that Defendants purported to be the bargaining agent for workers at their dairies; Plaintiffs only allege that Defendant is a multiemployer pension trust fund under ERISA.  Second, while Plaintiffs reference "alleged collective bargaining agreements" they do not indicate when the agreements were executed, how many such agreements there may have been, who the parties were to the agreements or whether any agreement that was executed was an agreement for general terms and conditions of employment or whether it (or they) was/were an agreement or agreements solely for participation in the Pension Plan.

The pension Plan administered by Defendants, is governed solely by the provisions of ERISA and covers agricultural workers on the same terms as any other workers.  <u>Winterrowd v. David Freedman & Co., Inc.</u>, 724 F.2d 823, 826, (9th Cir. 1984).  While the obligation to make contributions to a pension trust fund may, and usually does, arises in the first instance from the terms of a binding CBA, the authority of the trust fund to enforce the terms of the employer's participation and the defenses available to the employer to avoid obligations are governed by the provisions of the ERISA.  <u>MacKillop v. Lowe's Market, Inc.</u>, 58 F.3d 1441, 1443 (9th Cir. 1995)

("section 515[1] [of ERISA] mandates that employers are responsible for ERISA plan contributions regardless of defenses challenging the validity of the underlying CBA").

The capacity in which Defendants functioned when the referenced agreement or agreements were executed is important because the plain language of section 515 of ERISA recognizes the enforceability of obligations that arise as a result of CBA's between a union and employer and recognizes as well obligations for contributions that arise as a result of agreements that are executed directly between the employer and a pension fund.  The crux of Plaintiffs' contentions regarding their obligations to Defendants is that Defendant Pension Fund was not a certified bargaining agent pursuant to ALRA and that the agreement or agreements under which Defendants contend they are entitled to contributions from Plaintiffs are void and the obligation for contribution is therefore unenforceable.  As the court reads section 515, it appears to the court that an employer may agree directly with the pension fund to obligate itself to make contributions to the pension fund irrespective of any CBA.  Under such an agreement directly between the employer and the pension plan, there is no issue of invalidity of an underlying CBA and the obligation of the employer is clearly enforceable under section 515.  The court finds that Plaintiffs have failed to adequately characterize the referenced agreement or agreements under which Defendants allegedly claim Plaintiffs are obligated to make contributions to the Fund. Plaintiffs' motion to dismiss fails on that account.

Even if Defendants functioned as a union and Plaintiffs obligation to make contributions arose, in the first instance, as a result of a CBA; it does not automatically follow that the obligation imposed by the CBA is void.  "For reasons of public policy, traditional contract law does not apply with full force in actions brought under [ERISA] to collect delinquent trust fund contributions."  Southwest administrators, Inc. v. Rozay's Transfer, 791 F.2d 769, 733 (9th Cir. 1987).  The public policy purpose behind the limitation of applicability of traditional contract

---

[1]   ERISA section 515, 29 U.S.C. § 1145 provides: "Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement."

defenses to the ability of pension plans to enforce delinquent contributions Congress's determination that "restricting the availability of contract defenses" prevents collection actions from becoming unnecessarily cumbersome and costly.  Id.  Specifically, the Ninth Circuit has noted that "the only valid defenses by an employer [. . .] [are found] in cases where (1) the pension contributions themselves are illegal, or (2) the CBA is void rather than voidable." MacKillop 58 F.3d at 1444.  Of significance to Defendants' contentions, the MacKillop court held that a CBA obligating an employer to make contributions to a pension fund was not void *ab initio* where the agreement was executed pre-hire and the union negotiating the agreement failed to achieve majority status post hire.  Id.  Defendants contend that the factual situation of the agreements under which Plaintiffs allegedly became obligated to make contributions to the pension fund is substantially the same as the situation discussed in MacKillop requiring the same result.  As Defendants point out, one district court in this circuit has dismissed an action very similar to the one at bar under the authority of MacKillop.  See Dairy Employees Union Local No. 17 Christian Labor Ass'n of the United States Pension Trust v. Robert Vander Eyk Dairy, CV 12-4545 DSF (C.D. Cal. 2013) (appended to Defendants' Memorandum of Points and Authorities, Doc. # 6).

The opinion in MacKillop represents a particular factual application of a more generalized proposition that a defect in the formation of a facially valid CBA is not a defense to the obligations that arise under ERISA as a result of the defective CBA.  See, e.g. Berry v. Garza, 919 F.2d 87, 90 (8th Cir. 1990) (employer who "knowingly entered into a facially valid collective bargaining agreement with the Union, [. . .] is now estopped from raising the defense of lack of majority status to avoid his obligation to the Fund"); Central States, Southeast & Southwest Areas Pension Fund v. Gerber Truck Serv., Inc., 870 F.2d 1148,1153 (7th Cir. 1989) ("nothing in ERSA makes the obligation to contribute depends on the existence of a valid collective bargaining agreement").

Plaintiffs' complaint fails to include facts that specify the historical context of Defendants' claim for contribution to the Pension Plan.  Plaintiffs allege that the Plaintiff dairies

-7-

have never held an election to recognize any union.  Reading between the lines, what Plaintiffs' allegations suggest is that the Plaintiff dairies allowed their workers to select union representation by an unauthorized means, such as card check, and initially recognized an otherwise facially valid CBA in which they agreed to make contributions to the Pension Fund. Another possibility, as suggested earlier, is that Plaintiffs could have promised their employees the Plaintiff dairies would contribute to a Pension Fund directly and in the absence of a CBA in order to blunt union organizing efforts.  Another possibility is that Defendants and Plaintiffs entered into collective bargaining in good faith and executed one or more CBA's obligating Plaintiffs' contributions to the Plan before it was discovered that Defendants were not certified, for some undisclosed reason, under the ALRA.  Each of these possibilities give rise to different issues and require different analyses.

The problem Plaintiffs face is that section 515 of ERISA, as interpreted through MacKillop and related cases, set very substantial limits to the grounds upon which Plaintiffs can avoid the obligation to make contributions to the Pension Plan thus creating a legal presumption that Defendants' claim of entitlement to Plaintiffs' contributions is lawful and enforceable.  In order to state a claim for declaratory relief against Defendants' presumptively valid claim, it is Plaintiffs' burden to allege facts sufficient to allow the court to find that the alleged obligation under ERISA is void.  The sparse set of facts alleged by Plaintiffs does not fill the bill.  In addition to the argument put forward by Defendants invoking the holdings in MacKillop and related cases, Plaintiffs have the burden to show why doctrines such as waiver and estoppel do not apply.  Plaintiffs' action for declaratory relief is deficient because it fails to inform the court of facts upon which it can be determined that *all* of the limitations placed on defenses to obligation under ERISA do not apply.

To the extent Plaintiffs seek declaratory or injunctive relief with regard to the allegedly unfair arbitration clause contained in the agreement between Plaintiffs and Defendants, the claim is not sufficiently pled for the same reason.  The court's analysis of whether the arbitration clause can be voided necessarily begins with a determination whether Plaintiff's agreement with

Defendants, of which the arbitration agreement is a part, is void.  Plaintiffs have not alleged legal authority that would enable the court to find that an arbitration agreement is unconscionable as a matter of law simply because it allocates a party's share of arbitration costs more heavily on the employer's side.

Finally, Plaintiff's complaint to state a claim pursuant to California's UCL fails because Plaintiffs have failed to allege facts sufficient to show that Defendants' arbitration action to recover past contributions and penalties from Plaintiffs is unlawful.  As stated earlier, Plaintiffs' claim under California's UCL is predicated on Plaintiffs claim of invalidity of any obligation of Plaintiffs to make contribution payments to the Plan.

Because the deficiency in Plaintiffs' complaint is, at this point, primarily one of failure to allege a sufficient factual context to allow a determination of rights, Plaintiff's complaint will be dismissed with leave to amend.


THEREFORE, for the reasons discussed above, Defendants' motion to dismiss is hereby GRANTED.  Plaintiffs' complaint is hereby DISMISSED in its entirety with leave to amend. Any amended complaint shall be filed and served within twenty-eight (28) days from the date of service of this order.

IT IS SO ORDERED.

Dated:   February 10, 2014       _____

SENIOR  DISTRICT  JUDGE