**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **IRIGARAY DAIRY, CHARLES VAN DER KOOI DAIRY, HENRY JONGSMA & SON DAIRY , and COW-WEST NORTH STAR DAIRY,**<br><br>**Plaintiffs,**<br><br>vs.<br><br>**DAIRY EMPLOYEES UNION LOCAL NO. 17 CHRISTIAN LABOR ASSOCIATION OF THE UNIDED STATE OF AMERICA PENSION TRUST, and BOARD OF TRUSTEES OF THE DAIRY EMPLOYEES UNION LOCAL NO. 17 CHRISTIAN LABOR ASSOCIATION OF THE UNITED STATES OF AMERICA PENSION TRUST,**<br><br>**Defendants.** | **1:13-cv-1112 AWI MJS**<br><br>**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND**<br><br>**Doc. # 16** |

This is an action for damages and declaratory relief by plaintiffs Irigaray Dairy, Charles Van Der Kooi Dairy, Henry Jongsma & Son Dairy and Cow-West Northstar Dairy ("Plaintiffs") against defendants Dairy Employees Union Local No. 17, Christian Labor Association of the United States of America Pension Trust and the Board of Trustees of the Dairy Employees Union Local 17 Christian Labor Association of the United States of America Pension Trust ("Defendants"). Currently before the court is Defendants' motion to dismiss Plaintiffs' first

amended complaint pursuant to F.R.C.P. 12(b)(6). Federal Subject matter exists pursuant to 28 U.S.C. § 1331. Venue is proper in this court.

## PROCEDURAL HISTORY

The original complaint in this action was filed on July 18, 2013. Like the currently operative First Amended Complaint, the original complaint alleges a claim for declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 and a claim for damages pursuant to California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200. On February 10, 2014, the court granted Defendant's motion to dismiss Plaintiffs' complaint and granted leave to amend. Plaintiffs First Amended Complaint ("FAC") was filed on March 10, 2014. The instant motion to dismiss the FAC was filed on March 24, 2014. Plaintiffs filed their opposition on April 7, 2014 and Defendants filed their reply on April 14, 2014. The matter was taken under submission without oral argument as of April 21, 2014.

## FACTUAL BACKGROUND

This is an action by Plaintiffs seeking declaratory judgment to hold Plaintiffs not liable under 29 U.S.C. § 1381, a provision of ERISA that makes employers who withdraw from employee benefit plans liable for unfunded fund liability at the time of employer withdrawal. For "decades," Plaintiffs made regular contributions to an employee benefit plan administered by Defendant Board of Trustees (hereinafter, the "Plan"). Plaintiffs allege that the Christian Labor Association Union ("CLA") is not a union certified by the Agricultural Labor Relations Board ("ALRB") and is thus cannot lawfully represent agricultural workers through any collective bargaining agreement ("CBA"). The "agricultural workers" in question in this action are local milk truck drivers (the "Drivers") who service the Plaintiff dairies. Plaintiffs allege that the Drivers were "members of and/or affiliated with the CLA Union." Doc. # 15 at 9-10. Plaintiffs allege that sometime in the unspecified past the "local milk truck drivers who picked up Plaintiffs' milk threatened and extorted Plaintiffs into making payment to the union and Defendants by refusing to pick up milk from Plaintiffs' dairies unless Plaintiffs made payments to the CLA Union and Defendants." Plaintiffs allege that "such arrangement was illegal and

void under California law." Doc. # 15 at 17.  Plaintiffs' FAC does not allege that there was or was not a writing that purported to require payment to Defendants; only that Plaintiffs suffered coercive and extortionate pressure in the first instance to make contributions to Defendants and continued to do so; passing the practice along to younger family members without question in the mistaken belief that such payments were legally required.  Plaintiffs allege Defendants were able to force Plaintiffs to establish the practice of making payments to Defendants in the first instance by taking advantage of Plaintiffs' relative ignorance of the law.

## LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure can be based on the failure to allege a cognizable legal theory or the failure to allege sufficient facts under a cognizable legal theory.  Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir.1984).  To withstand a motion to dismiss pursuant to Rule 12(b)(6), a complaint must set forth factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) ("Twombly").  While a court considering a motion to dismiss must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), and must construe the pleading in the light most favorable to the party opposing the motion, and resolve factual disputes in the pleader's favor, Jenkins v. McKeithen, 395 U.S. 411, 421, reh'g denied, 396 U.S. 869 (1969), the allegations must be factual in nature.  See Twombly, 550 U.S. at 555 ("a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do").  The pleading standard set by Rule 8 of the Federal Rules of Civil Procedure "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) ("Iqbal").

The Ninth Circuit follows the methodological approach set forth in Iqbal for the assessment of a plaintiff's complaint:

> "[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."

Moss v. U.S. Secret Service, 572 F.3d 962, 970 (9th Cir. 2009) (quoting Iqbal, 129 S.Ct. at 1950).

## DISCUSSION

**I. Plaintiffs' Claim for Declaratory Relief**

Plaintiffs' first claim for relief seeks a declaration of the rights of the parties with regard to two related issues. First, Plaintiffs seek judicial declaration that they are not obliged to make withdrawal liability payments under the federal Employees Retirement Income Security Act ("ERISA"), and second, that they are not bound to arbitrate disputes with regard to liability under ERISA under a system that places all of the expense of arbitration on them, win or lose. The court will consider both issues in turn.

### A. *Withdrawal Liability under ERISA*

At the heart of Plaintiffs' action is a provision of ERSA that protects the integrity of retirement benefit funds by requiring that an employer withdrawing from a multi-employer plan is liable for the unfunded vested benefits of its employees. Pursuant to 29 U.S.C. § 1381: "If an employer withdraws from a multiemployer plan in a complete withdrawal or a partial withdrawal, then the employer is liable to the plan in the amount determined under this part to be the withdrawal liability." This provision was added to ERISA under the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"). The idea behind the MPPAA amendments is that multiemployer defined pension benefit plans often have current assets that are less than the "present actuarial value of employees vested benefits." United Foods, Inc. v. Western Conference of Teamsters Pension Trust Fund, 816 F.Supp. 602, 606 (N.D. Cal. 1993) (*aff'd* 41 F.3d 1338). United Foods explains the purpose of the MPPAA as follows:

> [W]hen employers withdraw from a multiemployer pension plan regulated by ERISA, they must pay their proportionate share of the [unfunded vested benefit]as "withdrawal liability" so that the plan is compensated for

-4-

benefits which have already vested with the employees at the time of the employer's withdrawal. [Citation.]  Otherwise the financial burden of the employees' vested benefits would shift to other employers in the plan and ultimately to the Benefit Guarantee Corporation [. . .], which insures such benefits."

Id. (internal citations omitted).

As the court has previously noted, "the obligation to make contributions to a pension trust fund may, and usually does, arises in the first instance from the terms of a binding CBA. The authority of the trust fund to enforce the terms of the employer's participation and the defenses available to the employer to avoid obligations are governed by the provisions of the ERISA." MacKillop v. Lowe's Market, Inc., 58 F.3d 1441, 1443 (9th Cir. 1995) ("section 515[1] [of ERISA] mandates that employers are responsible for ERISA plan contributions regardless of defenses challenging the validity of the underlying CBA"). Doc. # 14 at 5:21-6:2. MacKillop stands for the proposition that "[e]mployers are responsible for ERISA plan contributions regardless of defenses challenging the validity of the underlying CBA." Id. at 1443.  The MacKillop court recognized only two valid defenses to an employer's obligations under ERISA. An employer seeking to avoid liability under ERISA for required contributions may allege either that the employers contributions are unlawful because there is no agreement specifying the terms of the employer's contribution, or may show that the agreement establishing the employers participation was void *ab initio*. Id. at 1445.  Plaintiff's FAC asserts both defenses and the court will consider each in turn.

### *1. Plaintiffs have Failed to Allege the Illegality of Plan Contributions*

Plaintiffs, as the court understands the FAC, contend that the funds they deposited in the

---

[1] ERISA section 515, 29 U.S.C. § 1145 provides: "Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the  terms and conditions of such plan or such agreement."

Plan were not lawfully placed there, but were the result of fraudulent inducement, extortion or coercion in the first instance and the result of ignorance of the law for decades thereafter. Such contentions are most certainly time barred. Contract claims under California law are subject to a four-year limitations period, see Cal. Civ.Code § 337(1), and fraud claims generally are subject to a three-year limitations period. Cal. Civ.Code § 338(d). The limitations period for personal tort injury claims is two years, Cal.Civ.Proc.Code § 335.1, and the limitations period for claims under California's UCL is four years. Cal. Bus. & Prof.Code § 17208. Given that events having any bearing on the "first instance" of Plaintiffs' contributions to the Plan are admitted to have occurred "decades" ago, there is no conceivable basis upon which Plaintiffs could allege those contributions were unlawful because they were the result of fraudulent coercive or otherwise tortious conduct. It is elementary that ignorance of legal rights does not toll the running of any limitations period and Plaintiffs offer no other basis for tolling. The court finds that Plaintiffs are therefore time-barred from asserting that their contributions to Defendant Plan was unlawful in the first instance because of fraud, coercion or other tortious conduct by Defendants.

The other basis upon which a party may show that contribution to a multiemployer benefit fund is unlawful is to allege evidence to show that the contributions were not made pursuant to any written agreement directing such payment. Under ERISA, a benefit plan must "'be established and maintained pursuant to a written instrument.' [Citation.]" Davidian v. Southern California Meat Cutters Union, 859 F.2d 134, 136 (9th Cir. 1988) (citing 29 U.S.C. § 1102(a)(1)). Exactly what is sufficient to constitute a "plan" for ERISA purposes cannot be discerned from ERISA itself, which tautologically defines a "plan" as "any plan program or fund." Belanger v. Wyman-Gordoman Co., 71 F.3d 451, 454 (9th Cir. 1995). As the Belanger court observed, "[t]here is no authoritative checklist that can be consulted to determine conclusively when an employer's obligations rise to the level of an ERISA plan." Id. at 455.

The decision in <u>Belinger</u> offers guidance as to what considerations are most significant as follows:

> One very important consideration is whether, in light of all the surrounding facts and circumstance, a reasonable employee would perceive an ongoing commitment by the employer to provide employee 1135 (1st Cir. 1995) (advocating that courts should judge the question of whether an employer "established or maintained" a benefit plan within the scope of ERISA "from the employees' place of vantage"). Thus, evidence that an employer committed to provide long-term or periodic benefits to its employees will often be telling. [Citations.]

<u>Id.</u> at 455.

Because Plaintiffs have moved for determination that there was never a valid agreement, it is their burden to allege facts sufficient to support the claim. As matters stand, the court has found that Plaintiffs are time-barred from asserting that any of Defendants' actions at the inception of any agreement renders the agreement unlawful for purposes of administration of the Plain under the terms of ERISA. Likewise, the court will find below that case authority does not support the proposition that Defendants' status as uncertified at the time the agreement was executed necessarily invalidates any agreement between the parties for purposes of administration of the trust fund established by the parties under ERISA. Although Plaintiffs have been careful to allege there was never a *valid* writing of any kind between Plaintiffs and Defendants, they have not alleged there was no writing at all. As the court interprets the case authority cited above, the determination of the legality of Plaintiffs' contributions to Defendants' Plan does not turn on the answer to the question of *why* the Plaintiffs made the contributions, it turns on the answer of *how* those contributions were made. It is undisputed that Plaintiffs made regular contributions to Defendants' Plan for "decades." While the court must make all reasonable inferences in favor of Plaintiffs, the court cannot reasonably infer that there was no writing, valid or invalid, that directed how Plaintiffs were to calculate their contribution to Defendants' Plan. The undisputed fact the payments were made for "decades" is strong evidence that Plaintiffs undertook a long term commitment to the Plan in writing and, by inference, provided reason for an employee to justifiably expect that the Plan was established

and being maintained by Plaintiffs for the employees benefit.  The court cannot infer otherwise on the basis of the facts alleged.

In granting Defendants' motion to dismiss Plaintiffs' original complaint, the court noted that the motion to dismiss was granted in substantial part because Plaintiffs' complaint had failed to allege facts concerning any agreement that may have existed between the parties to make a reasoned decision as to the validity of that agreement.  Plaintiffs' FAC has not improved matters in that regard.  It bears emphasis that the determination of the validity or invalidity of any agreement that may have existed between the parties is a matter for the court.  Plaintiffs cannot establish that any agreement was invalid by merely alleging that it was, and the court cannot make a finding that any agreement was invalid for ERISA purposes on the information alleged and the case authority presented.  The court concludes that Plaintiffs have failed to allege facts that, if proven, would show that Plaintiffs' contributions to Defendants' Plan were unlawful.

### 2. *Plaintiffs' FAC Fails to Allege Any Agreement was Void Ab Initio*

Plaintiffs FAC relies primarily on the California appellate case of <u>Joe A. Freitas & Sons v. Food Packers, Processors and Warehousemen Local 865</u>, 164 Cal.App.3d 1210 (2nd Dist. 1985) ("<u>Freitas</u>") for the proposition that, under the ALRA, any agreement between an employer and a union that is not certified by the ALRB is void *ab initio*.  In <u>Freitas</u>, the union in question had held an election and received a majority of votes from employer's workers, but subsequently withdrew its request for certification from the ALRB when the International Union of Agricultural Workers ("IUAW") objected.  <u>Id.</u> at 1217.  The union in question did, however, continue to represent a certain category of workers for a period of some twelve years after it withdrew its request for certification.  <u>Id.</u> at 1215.  There arose a dispute between the employer and the workers who continued to be represented by the union and the dispute was submitted to arbitration under the CAB that existed between the non-certified union and the employees. Upon receiving an arbitration decision the employer felt was not desirable, the employer filed

suit to vacate the arbitration decision on the ground, *inter alia*, that the CAB under which the arbitration was undertaken was "illegal because Local 865 was not certified as the collective bargaining representative [for all of the agricultural workers of Employer] as required by the California Labor Code . . . ." Id. at 1214. In vacating the arbitration award, the Freitras court held that CAB under which the arbitration was undertaken was void (as opposed to valid but voidable) as of the time "the IUAW was certified to represent all agricultural employees of Employer." Id. at 1218.

Freitas does not support the proposition that a CAB between an agricultural employer and a union that is not certified by the ALRB is void *ab initio*. The Freitas court declined to speak directly to the issue of whether the CAB was void at its inception, but rather held that it was void in any event as of the time the competing union, the IUAW, was certified to represent all of the employer's agricultural workers. Id. Significantly, the decision in Freitas did not base its decision on a formulaic rule. See id. at 1219 (recognizing that the general rule of "'denying relief to parties to illegal contracts is subject to a wide range of exceptions" depending on considerations of the kind of illegality, the public policy behind the illegality and other equitable considerations). The Freitas court noted that "[t]he power of an arbitrator to determine the rights of the parties depends upon the existence of a valid contract under which rights might arise;" id. at 1219, and held ultimately that, by withdrawing its application for certification, the union "estopped itself from representing the employees that voted for it." Id.

As previously noted, the relevant policy purpose behind ERISA, and in particular behind the MPPAA, is to protect the integrity of multiemployer retirement funds and to avoid shifting the financial burden of employer withdrawal from the funds onto other employers or ultimately to the Benefit Guarantee Corporation. United Foods, 816 F.Supp. at 606. Also as previously noted, the Freitas court looked in part to the equitable principle of estoppel to determine when an

agreement should be held invalid. Although ERISA preempts state law claims based on estoppel, the Ninth Circuit has recognized that "federal equitable estoppel principles can, in certain circumstances, apply to some claims arising under ERISA." Greany v. Western Farm Bureau Life Ins., 973 F.2d 812, 821 (9th Cir. 1992). The court recognizes that the precise scope of applicability of equitable estoppel to ERISA cases has become somewhat less expansive following the Supreme Court's decision in Mertins v. Hewitt Assoc., 508 U.S. 248 (1993), and the Ninth Circuit decision in Watkins v. Westinghouse Hanford Co., 12 F.3d 1517 (9th Cir. 1993). Both cases appear to have limited the ability of *plaintiffs* to assert claims for money damages by a plan participant or beneficiary based on principles of equitable estoppel. In this case, however, it is the Plan fiduciary that seeks to assert equitable estoppel defensively to prevent the Plan participants (employers) from receiving declaratory judgment limiting their responsibility to the plan. This difference is significant.

The Ninth Circuit's decision in Alaska Trowel Trades Pension Fund v. Lopshire, 103 F.3d 881 (9th Cir. 1996) ("Alaska Trowel") makes it clear that a trust fiduciary may assert a claim based on equitable estoppel if the claim seeks to protect the integrity of the fund consistent with the purposes of ERISA. See Id. at 884 (differentiating cases that have limited the use of estoppel based on the effect of the claim to weaken or protect the trust fund); Davidian, 859 F.2d at 136 (distinguishing cases that limit application of equitable estoppel on the basis of the application of estoppel for or against the benefit plan). In Alaska Trowel, the defendant, an employer notified the plaintiff union that he was repudiating a pre-hire agreement under which the employer was making contributions to the plaintiff. The defendant continued submitting contribution reports and making payments to the trust fund for a period of about five years. In reliance on the employer's contributions the trust fund credited employees with pension service credits and purchased annuities for some employees. Id. at 882. Eventually, the trust fund

brought an action for contribution of unpaid funds. The defendant employer moved for summary judgment and cross claimed to recover funds that had been contributed since the notice of repudiation. Id. The trust fund moved for summary judgment based claiming that the defendant employer was estopped from denying his obligation to the trust fund. The district court found that the agreement had been repudiated, but that the employer was estopped from claiming no duty to make contributions to the trust fund.

On appeal, the defendant employer asserted that the plan fiduciary could not rely on equitable estoppel to enforce plan participation because contributions to the plan were illegal because the agreement had been repudiated. Id. at 882-883. The Alaska Trowel court held that the existence of a writing specifying the obligations of the plan participant was sufficient, even if expired, expired with impasse, or repudiated, to satisfy the writing requirement of 29 U.S.C. § 186(a). Id. at 883. The Alaska Trowel court upheld the district court's reliance on equitable estoppel insofar as the plan fiduciary justifiably relied on the employer's continued submission of work reports and plan payments. The appellate court reversed the district court insofar as the plan fiduciary has asserted a cross-claim for contributions for the period of time after the employer stopped submitting reports or payments. Id. at 884-885.

The elements of equitable estoppel applicable to an ERISA case are:

> (1) the party to be estopped must know the facts; (2) [the party] must intend that [its] conduct shall be acted on or must so act that he party asserting the estoppel has a right to believe it is so intended; (3) the [party asserting estoppel] must be ignorant of the true facts; and (4) the [party asserting estoppel] must rely on the [other's] conduct to his injury.

Greany, 973 F.2d at 821 (quoting Ellenburg v. Brockway, Inc., 763 F.2d 1091, 1096 (9th Cir. 1985). The fact known to Plaintiffs but not to Defendants is the fact of Plaintiffs' contention that they have no responsibility to Defendants' Plan at its inception based on either the alleged conduct of the Defendants or on the status of the parties at the inception of an agreement that is

implied but not specified. The conduct of Plaintiffs that reasonably engendered Defendants' reliance consists of regular contributions to the Plan fiduciary which justifiably relied on Plaintiffs actions by crediting employees with retirement credits and generally administering the Plan for the employees' benefit.

The court finds that Plaintiffs are equitably estopped from asserting they have no responsibility under ERISA to the Plan based on the invalidity of the plan at its inception. As a result, the court finds that Plaintiffs have failed to alleges facts sufficient to find they are not responsible under the terms of ERISA to the Plan fiduciary for withdrawal liability pursuant to 29 U.S.C. § 1381.

### *B. Arbitration Costs*

Plaintiffs' FAC also seeks a declaration of rights as to what they maintain is an unconscionable arbitration system that they allege requires Plaintiffs to pay their own share of arbitration costs if they prevail in an arbitration dispute and pay both theirs and the Plan's arbitration costs, including attorney's fees if Plaintiffs lose the dispute. Defendants contend the arbitration arrangement is not unconscionable. Defendants also contend that in any event the issue is moot because the parties have agreed "to use an arbitrator without using the American Arbitration Association, and because Defendants have expressly agreed that the allocation of all fees and costs is within the discretion of the arbitrator. Doc. # 19 at 23-25.

Pursuant to the above discussion, the court has found that the funds deposited by Plaintiffs in the Plan and the obligations that arise from Plaintiffs' planned withdrawal from the Plan are governed by the terms of ERISA. Pursuant to 29 U.S.C. § 1401(a)(2), the costs of arbitration can be insured by the parties, provided according to stipulation by the parties or, if no provision is made by the parties, awarded at the discretion of the arbitrator. The question, then, is whether the parties have otherwise provided for arbitration costs or whether, by not agreeing,

they have left the matter of costs to the discretion of the arbitrator. Plaintiffs allege that "Trustees' arbitration clause" is the instrument that unconscionably burdens Plaintiffs with the costs of arbitration.

The court's first reaction is, the "arbitration clause" to what? Is the court to presume that the "arbitration clause" is a part of a larger writing that otherwise directed Plaintiffs' relationship with Defendants' Plan? If so, is the court to hold that only the clause is valid but voidable on the ground of unconscionablity? What about the rest of the document of which the "arbitration clause" is presumably only a part?

Rather than try to answer any of these imponderables, the court will simply note that the fact that the allocation of arbitration costs lies with the discretion of the arbitrator in the absence of any other arrangement by the parties suggests that the court is bound to review any award of costs of arbitration under an abuse of discretion standard. Given this discretion by the arbitrator, the court finds it lacks any basis to invalidate any particular allocation of arbitration costs until such time as the costs are actually allocated and the arbitrator's (or Plan's) allocation of costs can be fully evaluated under equitable principles in light of ERISA's policy objectives. The court also notes that Plaintiffs did not respond to Defendants contention that the FAC's objection to the "arbitration clause" are moot because the parties have agreed to arrangements other than those provided by the clause.

The court is unwilling to grant declaratory judgment on the basis of the sparse facts presented. Further, it appears to the court that, given the discretion of the arbitrator to fashion an apportionment of arbitration costs at his or her discretion, the matter may not be ripe for adjudication. The court will grant Defendants' motion for dismissal both on the ground of mootness and on the ground that Plaintiffs have failed to allege facts or law sufficient to state a claim for relief. Leave to amend will be granted to add necessary facts.

**II. Plaintiffs' Claims for Damages Pursuant to California's UCL**

Plaintiffs allege their second claim for relief pursuant to California's UCL based on Defendants':

> [U]nlawfully (1) assert[ing] withdrawal liability payments are due when no lawful obligation or collective bargaining agreement exists; (2) Defendants' failure to submit funding notices to Plaintiffs as required under ERISA §§ 502 (a)(8) and 101(f); (3) Defendants failure to timely demand withdrawal liability to the harm of Plaintiffs which raised the issue of laches and waiver; (4) Defendants' failure to provide review and information regarding the withdrawal liability calculations; (5) and demanding that Plaintiffs be bound by Defendants' Trust Agreement arbitration clause that is unconscionable and invalid when Plaintiffs are required to enter arbitration to raise some defenses pursuant to ERISA.

Doc. # 15 at 7:12-19.

Preemption of state law for claims arising under ERISA is provided by 29 U.S.C. §1144(a) which provides in pertinent part that "the provisions of this title . . . shall supersede any and all State laws insofar as they may now or hereafter *relate to any employee benefit plan . . . .*" Id. (italics added). In this case, there is no dispute Defendants' Plan is a benefit plan within the meaning of § 1144(a). ERISA preemption is far reaching, and may be appropriate even where the preempted state law only indirectly affects the employee benefit plan." Nadworny v. Shaw's Supermarkets, Inc., 405 F.Supp.2d 124, 131 (D.Mass. 2005) (citing Ingersol-Rand Co. v. McClendon, 498 U.S. 133, 139 (1990). In determining whether ERISA preempts state law, Congress's intent in passing ERISA, and in particular the preemption provision, is of highest importance. Id. at 137-138.

The first issue in dispute in this case is whether the provisions of ERISA, including the preemption provision, should apply in light of Defendants' conduct and their status as a labor union not certified under California law. Because the court has found that Plaintiffs have failed to allege facts to show that their contributions to the plan were unlawful under ERISA, the court necessarily concludes that those funds reside in an employee benefit plan subject to the

provisions of ERISA including previsions precluding claims based on state law.

The second issue is whether the wrongful conduct alleged under their UCL claim "*relate to*" any employee benefit plan such that the claims are subject to preemption. Plaintiffs' first and fifth bases for relief under their UCL claim essentially allege that Defendants unlawfully applied ERISA – particularly the arbitration and withdrawal liability provisions -- even though Plaintiffs were under no valid binding agreement with Defendants. These claims fail because the court has found that Plaintiffs have failed to allege facts or law sufficient to show that they were not subject to an agreement to make Plan contributions subject to ERISA. Plaintiffs second, third and fourth bases for relief under California's UCL appear to allege damages arising from timely performance of administrative tasks related to the fund. Notwithstanding the lack of explanation of how these administrative lapses or oversights could have damaged Plaintiffs, it is evident that the claims "relate to" Defendants' Plan and so are preempted under ERISA. See Cleghorn v. Blue Shield of California, 408 F.3d 1222, 1225 (9th Cir. 2005) (collecting cases where state statutory and tort claims are have been preempted, including claims for "damages for what are essentially claim processing causes of action").

The court grants Plaintiffs' request for judicial notice of the California Supreme Court case of People *ex rel.* Harris, Daily App. Reporter. July 29, 2014 (provided at Doc. # 51-1), and finds this case does not alter the court's analysis regarding the preemptive scope of subsection 1144(a). The Court's analysis in People *ex rel.* Harris devotes considerable attention to the question of facial preemption of UCL claims by various federal laws and carefully takes note of those instances where facial preemption of the UCL is not warranted because the issue implicated by the case cited is not specifically preempted by the federal statute. That is not the situation in the case at bar. ERISA facially preempts any application of state law to assert a claim "related to an employee benefit plan." The court has found that all of the alleged instances

of misconduct upon which Plaintiffs base their claim for relief pursuant to California's UCL are "related to an employee benefit plan" within the meaning of 29 U.S.C. §1144(a) and thus are preempted by ERISA. The California Supreme Court tacitly endorsed the application of facial preemption of UCL claims under ERISA by failing to cite any case where preemption did not apply to a UCL claim related to an employee benefit plan.

The court concludes Defendants are therefore entitled to dismissal of Plaintiffs' second claim for relief.

### III. Leave to Amend

"If a complaint is dismissed for failure to state a claim, leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distributing Co. v. Serv-Well Furniture Co., Inc., 806 F.2d 1393, 1401 (9th Cir. 1986).

During the pendency of Defendants' motion to dismiss, Plaintiffs filed a motion for leave to amend their complaint and lodged a proposed Second Amended Complaint ("SAC") with the court. See Doc. # 26-2 at 9. At this point it is clear to the court that what this case is about is the effort of Plaintiffs who, after making decades of contributions to an employee benefit plan, now seek to avoid the rather substantial penalties imposed by ERISA for withdrawal from the Plan. As the court has pointed out in the above discussion, the fundamental issue that governs the court's determination of Plaintiffs' claims is the issue of whether Plaintiffs past conduct has provided employees with a reasonable expectation of a right to payments from the Plan's assets. The court has examined Plaintiffs' proposed SAC and finds it comes no closer to answering this central question than either the original complaint or the FAC. Any amended complaint by Plaintiffs must directly confront the issue of whether or not their employees have a reasonable expectation of a right to retirement benefits under Defendants' Plan. Plaintiffs' proposed SAC

does not.  To allege claims that can proceed past the motion to dismiss stage of proceedings Plaintiffs must directly allege facts that answer the specific questions this opinion has propounded.  Among the most important question are these:

(1) Was there a writing that directed the decades of contributions that Plaintiffs made to the Plan?   Whether Plaintiffs believe any writing that may have existed to be valid or invalid, binding or nonbinding, is irrelevant to this fundamental question.

(2) If there was no writing at all, why did Plaintiffs make decades worth of contributions?

(3) If there was a writing, why should Plaintiffs not be equitably estopped from asserting the writing is invalid or nonbinding?

Basically, the policy purposes of ERISA tilt sharply in favor of the protection of the integrity of any benefit trust plan from which an employee may reasonably expect to receive regular payments.  Case authority demonstrates a marked pattern of overlooking technical problems in the formation or maintenance of employee benefit trust plans in favor of protecting plan integrity assets.  Plaintiffs who seek to dissociate themselves from employer responsibility under the terms of ERISA must clear a very high legal bar in order to show that they are both legally and equitably entitled to the return of any contributions made and have no liability for their withdrawal from the plan because no employee has any reasonable expectation of receiving benefits under the plan.

Again, Plaintiffs SAC falls far short of alleging facts to make the required legal and equitable showings.  Given Plaintiffs' reticence to add the specific facts to their FAC that the court stated were missing from the original complaint, the court has reason to doubt that Plaintiffs are able to state a sufficient case for being freed from liability for withdrawal payments under ERISA.  Nonetheless, in an abundance of caution the court will grant one additional opportunity for Plaintiffs to file a sufficient complaint.

THEREFORE, in consideration of the foregoing, it is hereby ORDERED that Defendants motion to dismiss Plaintiffs FAC is hereby GRANTED.  Plaintiffs' FAC is hereby DISMISSED in its entirety as to all Defendants.  Leave to amend is Granted.  The Clerk of the Court shall NOT FILE the currently-lodged proposed SAC.  Any further amended complaint shall be filed and served not later than twenty-one (21) days from the date of service of this order.

IT IS SO ORDERED.

Dated:   September 2, 2014                              _____
                                                                             SENIOR  DISTRICT  JUDGE