1

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                   FOR THE EASTERN DISTRICT OF CALIFORNIA

8

| | |
|---|---|
| **IRIGARAY DAIRY, CHARLES VAN DER KOOI DAIRY, HENRY JONGSMA & SON DAIRY , and COW-WEST NORTH STAR DAIRY,** | **1:13-cv-1112 AWI MJS** |
| **Plaintiffs,** | |
| **vs.** | **MEMORANDUM OPINION AND ORDER ON DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT** |
| **DAIRY EMPLOYEES UNION LOCAL NO. 17 CHRISTIAN LABOR ASSOCIATION OF THE UNIDED STATE OF AMERICA PENSION TRUST, and BOARD OF TRUSTEES OF THE DAIRY EMPLOYEES UNION LOCAL NO. 17 CHRISTIAN LABOR ASSOCIATION OF THE UNITED STATES OF AMERICA PENSION TRUST,** | **Doc. # 60** |
| **Defendants.** | |

21

22        On September 2, 2014, the court issued a Memorandum Opinion And Order (hereinafter,

23    the "September 2 Order") granting Defendants' motion to dismiss Plaintiffs' First Amended

24    Complaint ("FAC").  Doc. # 57.  The dismissal was with leave to amend.  On September 22,

25    2014, plaintiffs Irigaray Dairy, et al. ("Plaintiffs") filed their Second Amended Complaint for

26    Declaratory Judgment ("SAC").  Doc. # 59.  Currently before the court is the motion of

27    defendant Dairy Employees Union Local No. 17 Christian Labor Association of the United

28    States of American Pension Trust, et al. ("Defendants") to dismiss Plaintiffs' SAC pursuant to

F.R.C.P. 12(b)(6).  Federal subject matter jurisdiction exists pursuant to 28 U.S.C. § 1331.

Venue is proper in this court.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs are family-owned dairies that seek to cease participation in the retirement trust plan administered by Defendants (hereinafter, the "Plan").  In this action, Plaintiffs seek declaratory judgment holding Plaintiffs not liable under the Employees Retirement Income Security Act ("ERISA") for "unfunded liability" contributions to the Plan that would otherwise be required pursuant 29 U.S.C. § 1381 upon Defendants' withdrawal from a multiemployer retirement plan.  Plaintiffs allege they have made regular contributions to the Plan for "decades," but that the contributions were unlawfully coerced from Plaintiffs and not made according to any valid agreement between the parties.  In its September 2 Order, the court discussed whether leave to amend should be granted.  The court's primary concern was Plaintiffs' failure to allege facts that unambiguously described, among other things, the relationship between the Plaintiffs, the payments to the Plan that they made, and the Defendants.  See Doc. # 57 at 17:5-11.  In addition, the court expressed its concern with Plaintiffs' failure to unambiguously allege the relationship between themselves and the potential beneficiaries of the Plan.  That is, what is the reasonable expectation of which workers to benefit now or in the future from contributions to the Plan?

Plaintiffs SAC adds a substantial amount of information relevant to the issue of the relationship between the Plaintiff dairies and the regular contributions made to the Plan over a period of decades.  With regard to Plaintiff Henry Jongsma & Son Dairy, the SAC alleges:

> In the case of Plaintiff Henry Jongsma & Son Dairy, no written agreement has ever existed obligating Plaintiff Henry Jongsma & Son Dairy to make payments.  No [Agricultural Labor Relations Board ("ALRB")] was ever held at the dairy and at no time has the [Christian Labor Association ("CLA")] Union been certified pursuant to California law to represent Plaintiff Henry Jongsma & Son Dairy's employees.  Plaintiff Henry Jongsma & Son Dairy only began to make the payments to Defendants to keep the milk drivers from refusing to pick up the milk.  Plaintiff Henry Jongsma & Son Dairy did not make the payments for any other purpose and was illegally forced to make the payments to have its milk picked up by the milk truck drivers.  At no time has a written agreement, much less a collective bargaining agreement ever existed requiring Plaintiff Henry

Jongsma & Son Dairy to make payments.  Defendants accepted the payments without a written contract in violation of law and never informed Plaintiff Henry Jongsma & Son Dairy that such an arrangement was illegal.  Despite not ever being the legal representative of Plaintiff Henry Jongsma & Son Dairy's employees pursuant to the Agricultural Labor Relations Act, the CLA Union and Defendants kept illegally accepting payments from the dairy in violation of state and federal law.

Doc #. 59 at 3:18-4:5.

With regard to Plaintiff Charles Van Der Kooi Dairy, the SAC alleges:

Plaintiff Charles Van Der Kooi Dairy did not sign a written agreement with Defendants that began an obligation for Plaintiff Charles Van Der Kooi Dairy to make payments.  Defendants accepted the payments without a written contract in violation of law and never informed Plaintiff Charles Van Der Kooi Dairy that such an arrangement was illegal.  No ALRB election was ever held at the dairy and at no time has the CLA Union been certified pursuant to California law to represent Plaintiff's employees.  At no time has a written agreement, much less a collective bargaining agreement ever existed requiring Plaintiff Charles Van Der Kooi Dairy to make payments.  Plaintiff Charles Van Der Kooi Dairy made the payments based on false representations made by the CLA Union and/or mistake of fact and/or law.  Defendants accepted the payments without a written contract in violation of law and never informed Plaintiff Charles Van Der Kooi Dairy that such an arrangement was illegal.  Despite not ever being the legal representative of Plaintiff Charles Van Der Kooi Dairy's employees pursuant to the Agricultural Labor Relations Act, the CLA Union and Defendants kept illegally accepting payments form the dairy in violation of state and federal laws.

Doc. # 59 at 4:6-20.  With regard to Plaintiff Irigaray Dairy, the allegations regarding the relationship of the Plaintiff to the payments made to the Plan are very similar to those made with regard to Plaintiff Van Der Kooi with the exception that Plaintiff Irigaray Dairy alleges that:

Decades later, after making payments for years without any written contract, Plaintiff Irigaray Dairy unknowingly signed an after-the-fact, illegal, and void collective bargaining agreement and signed the agreement shortly before Defendants allege Plaintiff Irigaray Dairy withdrew from the purported plan.  Plaintiff Irigaray did not realize it was a collective bargaining agreement and signed the agreement based on misrepresentations from the CLA Union.  Plaintiff Irigaray Dairy clearly made a mistake of fact/law and had no knowledge that Plaintiff Irigaray Dairy was not required to bake the illegal payments. (*Operating Eng'rs Pension Trust v. Gillliam*, 737 F.2d 1501, 1503-05 (9th Cir. 1984) (employer who was not aware he was signing a collective bargaining agreement could raise defense CBA was void.))  The document cannot be applied retrospectively to the illegal payments that were made for decades without a written agreement and the document does not render the decades of illegal payments that were accepted by Defendants without a written agreement legal and valid.

Doc. # 59 at 4:27-5:11.  The SAC alleges essentially the same facts with regard to North Star Dairy as were made regarding Plaintiff Irigaray Dairy.

Plaintiffs also allege a set of facts that are intended to show that Defendant Plan is not a multiemployer retirement plan within the scope and meaning of 29 U.S.C. § 1381.  These allegations pertain mainly to the directorship of the Trust and the lack of separation between the trust and the Union.  In particular, Plaintiffs allege:

> Plaintiffs are informed and believe and allege that Defendants have been illegally operating and managing the pension fund in the local CLA Union office.  Specifically, one union trustee, who happens to also be the CLA Union California President, Vice President of the National CLA Union, and a local CLA Union employee, is running Defendants and the CLA Union as one entity out of the same office.  Plaintiffs further allege that in direct violation of the LMRA, the same interested union trustee has been solely managing and making decisions on behalf of Defendants with not meetings and votes, much less notice or input, from the employer trustees or any other union trustees.  Plaintiffs further allege that the sole interested union trustee and Defendants' attorneys are acting without joint authority from the employer trustees and have been seeking withdrawal liability against dairies with no votes or any other authority or approval of the trustees.  Therefore, Defendants have no standing and authority to seek such relief and are a pension fund as defined under ERISA.

Doc. 59 at 8:1-13.

Plaintiffs also allege "the CLA union is virtually extinct and the alleged Pension Fund is a dying fund that has mismanaged itself to the brink of extinction.  Instead of rewarding Defendants and the CLA Union for extraordinary misconduct, Plaintiffs propose that all funds that were unlawfully contributed to Defendants without a written agreement be remitted to the employees."  Doc. # 59 at 8:20-24.

Defendants' motion to dismiss was filed on October 6, 2014.  Plaintiffs' opposition was filed on October 20, 2014 and Defendants' reply was filed on October 28, 2014.  The matter was taken under submission as of November 3, 2014.

//

//

-4-

1

2

**LEGAL STANDARD**

3   A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure

4   can be based on the failure to allege a cognizable legal theory or the failure to allege sufficient

5   facts under a cognizable legal theory.  Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530,

6   533-34 (9th Cir.1984).  To withstand a motion to dismiss pursuant to Rule 12(b)(6), a complaint

7   must set forth factual allegations sufficient "to raise a right to relief above the speculative level."

8   Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) ("Twombly").  While a court

9   considering a motion to dismiss must accept as true the allegations of the complaint in question,

10  Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), and must construe the

11  pleading in the light most favorable to the party opposing the motion, and resolve factual

12  disputes in the pleader's favor, Jenkins v. McKeithen, 395 U.S. 411, 421, reh'g denied, 396 U.S.

13  869 (1969), the allegations must be factual in nature.  See Twombly, 550 U.S. at 555 ("a

14  plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than

15  labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

16  do").  The pleading standard set by Rule 8 of the Federal Rules of Civil Procedure "does not

17  require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-

18  unlawfully-harmed-me accusation."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) ("Iqbal").

19  The Ninth Circuit follows the methodological approach set forth in Iqbal for the

20  assessment of a plaintiff's complaint:

21      "[A] court considering a motion to dismiss can choose to begin by identifying
        pleadings that, because they are no more than conclusions, are not entitled to the
22      assumption of truth.  While legal conclusions can provide the framework of a
        complaint, they must be supported by factual allegations.  When there are well-
23      pleaded factual allegations, a court should assume their veracity and then
        determine whether they plausibly give rise to an entitlement to relief."
24

25  Moss v. U.S. Secret Service, 572 F.3d 962, 970 (9th Cir. 2009) (quoting Iqbal, 129 S.Ct. at

26  1950).

    //

27  //

28

1

**DISCUSSION**

2

At the outset, the court feels it is important to note what Plaintiffs seek to accomplish

3

4

through this action as reflected in the prayer for relief set forth in the SAC.  Plaintiffs seek (1) "a

5

declaration that Plaintiffs have no legal obligation to make withdrawal liability payments to

6

Defendants;" (2) a declaration that "Plaintiffs are not legally bound by Defendants'

7

unconscionable Trust Agreement arbitration clause;" and (3) restitution of "the monies Plaintiffs

8

paid directly to Plaintiffs' employees, instead of allowing Defendants to use the money for

9

illegal union activities and pension fund mismanagement."  Doc. # 59 at 14:20-27.  The first and

10

second prayers for relief were set forth in previous complaints; the third is new.  Defendants, in

11

12

their motion to dismiss, note that Plaintiffs have abandoned their claim for declaratory relief

13

from bearing costs for arbitration inasmuch as Plaintiffs have already agreed to arbitration.  An

14

inspection of Plaintiffs' opposition to Defendants' motion indicates no opposition to Defendants'

15

representation.  The court will therefore assume for the sake of this discussion that Plaintiffs

16

have abandoned their claim for declaratory relief with regard to any arbitration clause.

17

Neither party appears to address Plaintiffs' prayer for restitution directly to Plaintiffs'

18

19

employees of moneys paid by Plaintiffs to Defendant Trust.  The court has understood Plaintiffs'

20

prior complaints to be about two issues only – the unfairness of an arbitration scheme that,

21

according to Plaintiffs, has no contractual basis since no contract ever existed; and Plaintiffs'

22

obligations for withdrawal liability under ERISA.  In order to make sense of Plaintiffs' added

23

prayer for relief, the court must assume that it is Plaintiffs' contention that they are not only

24

entitled to relief from any obligation to pay a withdrawal penalty, but are also entitled to all the

25

26

money ever paid to Defendant trust because Defendants were not legally entitled to receive such

27

payments.  Plaintiffs' SAC has added a great deal of verbiage directed to the proposition that

28

Defendants had no right to collect any money at all from Plaintiffs and had no legal right to

accept the money that was paid by Plaintiffs.  However, inexplicably, while Plaintiffs have expended a great deal of effort alleging *facts* to support a claim that Defendants received regular payments unlawfully, they do not plead a separate legal basis for declaratory relief on that issue.

From the court's point of view, Plaintiffs SAC has conflated two separate claims for relief.  Plaintiffs' claim that Defendants illegally accepted payments to Defendants' Trust, as expressed in Plaintiffs prayer for restitution, necessarily implicates, among others, issues of standing, time limitations and tolling, and the pleading standard required to assert common law defenses to contract formation (such as fraud).  On the other hand, Plaintiffs' claim for declaratory judgment as to withdrawal liability under ERSA potentially raises separate issues, again among others, of ripeness, preemption, the scope of defenses under ERISA, and the basis of the court's review, if any, of withdrawal liability defenses that can waived if not addressed in arbitration.

Of some significance, Defendants have requested judicial notice of a trio of decisions from the District Court for the Central District of California in the cases of <u>Dairy Employees Union Local No. 17 Christian Labor Ass'n of the United States of America Trust, et al. v. Robert Vander Eyk Dairy, et al.</u>, CV 12-4545 DSF, and <u>Dairy Employees Union Local No. 17, et al. v. Henry Vender Poel and Son Dairy, et al.</u>, CV 12-04550 FMO (OPx).  <u>See</u> Declaration of Donna L. Kirchner, Doc. # 60-8.  While Defendants requested judicial notice of the decisions for the purpose of illustrating their legal contentions regarding the scope of withdrawal liability under ERISA, the court finds there are at least two other features of these decisions that are notable.

First, the court notes that on December 28, 2012, the defendants in Case # CV 12-4550 (Henry Vander Poel & Son Dairy, et al.) *cross claimed* for "Employer Recovery of Mistaken Contributions under ERISA."  <u>See</u> Exh. "C," Doc. # 6-11 at fn1.  From the description of the cross-claim, the court suspects that Plaintiffs in this action have decided to assert as a claim in

this action that which was asserted as a cross-claim in the Central District case and in the process lost sight of the separate legal concerns raised by such claim. While the court is presently unaware of the connection, if any, of either party's counsel with similar cases in the Central District, it is not unreasonable to suppose that either or both counsel in this action have more familiarity with the issues presented by Plaintiffs' SAC than the court does. The parties may therefore know, or think they know, the nature of Plaintiffs' claim for restitution under the SAC, and may think the claim can adequately be addressed as stated. The court, however, is frankly confused by the manner in which Plaintiffs have put forward their prayer for restitution and that is sufficient to support a finding that Plaintiffs have failed to plead "a short and plain statement of the claim showing that the pleader is entitled to relief" as required by F.R.C.P. § 8(a)(2).

Second, the copies of the Central District Court's three orders submitted in the Kirchner Declaration are notable in that two decisions are rulings on motions for summary judgment and therefore cover a broader range of factual possibilities than are available in the complaint. See Doc. #'s 60-9 and 60-10. What the discussions in the Central District's rulings evince is the importance of information outside the boundaries of the complaint in finally adjudicating the rights of the parties. In particular, the Central District's decision granting summary judgment to the plaintiffs in Dairy Employees Union Local No. 17 v. Vander Eyk Dairy, et al., CV 12-4545, Doc. # 60-10, relied heavily on deposition testimony by the defendant's agent to reach the conclusion that the defendant actually did understand he was executing an agreement obligating payments to the plaintiffs retirement trust fund. See Doc. # 60-10 at 3. The court further relied on deposition testimony to establish that, although the plaintiff union had not been certified to represent the employees of the Plaintiff, the union had been certified by the prior owner of the dairy prior to its purchase as a "turnkey" operation by the defendant Vander Eyk.

Finally, the court notes the Central District's reliance on MacKillop v. Lowe's Market,

Inc., 58 F.3d 1441 (9th Cir. 1995), for the proposition that defenses to the formation of a collective bargaining agreement ("CBA") generally do not relieve a party from withdrawal liability under ERISA.  This court placed similar reliance on MacKillop in its September 2 Order, noting that MacKillop limits defenses to withdrawal liability to situations where either (1) any agreement directing payment to a retirement trust was void *ab initio*, or (2) where there the payments were unlawful because "there is no agreement specifying the terms of the employers contribution."  Doc. # 57 at 5:18-19.  The holding in MacKillop figures significantly in the analysis of Defendants' motion because it not only limits the range of defenses to withdrawal liability under ERISA, it also provides the two explicit circumstances under which the lack of withdrawal liability can be pled.

     With regard to the issue of withdrawal liability, Defendants state that their motion to dismiss Plaintiffs' SAC is grounded on the following contentions:  (1) that Plaintiffs allegation that Defendant Pension Fund is not a "valid multiemployer fund under ERISA" is in contradiction to their prior admission in the FAC and the allegation is controverted in any event by facts alleged in the proposed SAC; and (2) that Plaintiffs allegation that Defendant Union lacks ALRB certification is insufficient  as a matter of law to constitute a defense to withdrawal liability under ERISA.  See Doc. # 60-1 at 2:18-20 (listing contentions upon which Defendants' motion is grounded).  However, it appears to the court that even if Defendants' contentions are both legally and factually supported, dismissal of Plaintiffs' SAC would still not be warranted. What Defendants do not address are Plaintiffs' still ambiguously worded allegations that, at least with respect to Plaintiffs Jongsma & Son Dairy and Charles Van Der Kooi Dairy, there was no "written agreement" "requiring [Plaintiff] to make payments."  Doc. # 59 at 11-13.  As noted above, the Central District cases Defendants submit for judicial notice illustrate the point that there is considerable space between "no written agreement requiring Plaintiffs to make

payments" and "no agreements of any kind requiring payment."  However, the space between the two allegations includes room for the latter, unstated proposition.  Similarly, Plaintiffs' allegation that there was never a union election on the premises and no union was ever certified is not the same as the allegation that none of Plaintiffs ever believed they belonged to a union and never paid union dues.  Again, Plaintiffs' failure to set forth plain, dispositive facts creates a factual space between what they allege and what would be considered a defense to withdrawal liability under MacKillop.  That said, however, the facts that Plaintiffs *do* allege are not *inconsistent* on their face with the possibility, however unlikely, that there are no employees of Plaintiff Dairies, past or present, who can legitimately claim benefits from Defendants' retirement Trust Fund.

As the court noted in its September 2 Order, the policy purpose of 28 U.S.C. § 1381 is to avoid unfunded liability in pension plans that arise when employer withdrawal from the Plan creates a deficit between the withdrawing employers contributions up to that point and the potential claims by future retirees who worked for that employer.  See Doc. # 57 at 4:16-5:3.  As the court also noted, the existence of any legitimate claims on retirement funds by the present or past employees of Plaintiff Dairies gives rise to important equitable principles that may be applied to estop Plaintiffs from asserting defenses to withdrawal liability where the Plaintiffs' conduct gives rise to a legitimate expectation of retirement benefits under Defendants' retirement Plan.  The court notes that neither Plaintiffs nor Defendants address, either in the SAC or in the motion to dismiss, the court's concerns regarding waiver or estoppel, time limits or tolling of limits.

The court is of the opinion that Plaintiffs are not going to allege facts that allow for adequate analysis of their claims in any future complaints because they have not done so to date. At this point, the court appreciates that the dispositive decisions in the cases before the Central

District were made in the context of motions for summary judgment.  It is this court's opinion that the only way there will be sufficient information before this court to permit any dispositive analysis of the Parties' rights and obligations will be if the court is free to consider competent evidence outside the SAC or any further amendment thereof and Defendants are similarly free to raise any and all relevant defenses to Plaintiffs' claims.  The court, it is anticipated, will also cease unnecessarily expending time and resources on ambiguously pled claims and insufficient motions to dismiss.

THEREFORE, it is hereby ORDERED that:

1. Defendants' motion to dismiss is GRANTED to the extent Plaintiffs' SAC seeks restitution of funds, either to themselves or their employees, of monies previously paid to Defendant Plan.

2. Defendants' motion to dismiss is DENIED in all other respects.

3. Plaintiffs are granted leave to file a third amended complaints should they so desire provided they notify the court within seven (7) days of the service of this order of their intention.  Any further amended complaint shall be filed and served not later than twenty-one (21) days from the date of service of this order.

4. The parties shall meet and confer to agree on a further scheduling order directing conduct of further discovery, if any, and filing of motions for summary judgment.  The parties shall submit any agreed upon scheduling order to the Magistrate Judge and shall schedule a further scheduling hearing with the Magistrate Judge if necessary.

IT IS SO ORDERED.

Dated:   March 4, 2015     _____

SENIOR  DISTRICT  JUDGE