<u>1</u>

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT

9

EASTERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| IRIGARAY DAIRY, CHARLES VAN DER KOOI DAIRY, HENRY JONGSMA & SON DAIRY , and COW-WEST NORTH STAR DAIRY, | Case No.  1:13-cv-01112-MJS **ORDER REGARDING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AND A PROTECTIVE ORDER** |
| Plaintiffs, | **(ECF Nos. 87, 88)** |
| v. | |
| DAIRY EMPLOYEES UNION LOCAL NO. 17 CHRISTIAN LABOR ASSOCIATION OF THE UNIDED STATE OF AMERICA PENSION TRUST, and BOARD OF TRUSTEES OF THE DAIRY EMPLOYEES UNION LOCAL NO. 17 CHRISTIAN LABOR ASSOCIATION OF THE UNITED STATES OF AMERICA PENSION TRUST, | |
| Defendants. | |

11

12

13

14

15

16

17

18

19

20

21

22

I.     <u>**INTRODUCTION**</u>

23

Plaintiffs Irigaray Dairy ("Irigaray"), Charles Van Der Kooi Dairy ("Van Der Kooi"),

24

Henry Jongsma & Son Dairy ("Jongsma"), and Cow-West North Star Dairy ("Cow-

25

West") (collectively "Plaintiffs") are four family-owned cattle dairies. Each participated in

26

an employee pension plan made available through Defendant Dairy Employees Union

27

Local No. 17 Christian Labor Association of the United States of America Pension Trust.

28

When Plaintiffs withdrew from participation in the plan, Defendants undertook to assess against them "withdrawal liability," the portion of the Pension Fund's unfunded vested benefits resulting from Plaintiffs' withdrawal from the plan. Plaintiffs brought this declaratory relief action asking the Court to determine whether the above Defendant and Defendant Board of Trustees of the Dairy Employees Union Local No. 17 Christian Labor Association of the United States of America Pension Trust (the "Board") (jointly, the "Pension Fund") should be allowed to assess that withdrawal liability.

Plaintiffs seek a judgment declaring that they are not liable under the Employees Retirement Income Security Act ("ERISA") for withdrawal liability under 29 U.S.C. § 1381. They make two primary contentions why they are not liable: (1) the Christian Labor Association ("CLA") Union was not certified pursuant to an Agricultural Labor Relations Board ("ALRB") election as required under California law, and (2) the alleged misconduct and mismanagement of the Pension Fund precludes liability.

More specifically, Plaintiffs seek a declaration that (1) "Plaintiffs have no legal obligation to make withdrawal liability payments to Defendants;" (2) " that Plaintiffs are not legally bound by Defendants' unconscionable Trust Agreement arbitration clause;" and (3) for restitution of "the monies Plaintiffs paid directly to Plaintiffs' employees, instead of allowing Defendants to use the money for illegal union activities and pension fund mismanagement." (Third Amended Complaint ["TAC"], ECF No. 71 at 14.) In addition to the declaratory relief claim, Plaintiffs present two additional claims for restitution and for Unfair Business Practices under California Law. See Cal. Bus. & Prof. Code § 17200. (Id.)

Plaintiffs filed the initial complaint in this action on July 18, 2013. (ECF No. 1.) Defendants moved to dismiss the complaint on August 19, 2013. (ECF No. 6.) On February 10, 2014, the Court granted the motion to dismiss but provided Plaintiffs leave to amend. (ECF No. 14.) The Court noted that the deficiency in the complaint warranting dismissal was "primarily one of failure to allege a sufficient factual context to allow a determination of rights." (Id. at 9.) Plaintiffs filed a first amended complaint, and

Defendants again sought to dismiss the complaint. (ECF Nos. 15-16.) During the pendency of the motion to dismiss, Plaintiffs moved to file a second amended complaint. (ECF No. 26.) On September 2, 2014, the Court granted the second motion to dismiss finding both the first amended and proposed second amended complaint insufficient, but provided leave to amend to file another complaint. (ECF No. 57.) The Court noted in the motion to dismiss:

> Again, Plaintiffs' [Second Amended Complaint] falls far short of alleging facts to make the required legal and equitable showings. Given Plaintiffs' reticence to add the specific facts to their [First Amended Complaint] that the court stated were missing from the original complaint, the court has reason to doubt that Plaintiffs are able to state a sufficient case for being freed from liability for withdrawal payments under ERISA. Nonetheless, in an abundance of caution the court will grant one additional opportunity for Plaintiffs to file a sufficient complaint.

(Id. at 17.) Plaintiffs filed its second amended complaint on September 22, 2014.[1] (ECF No. 59.) Defendants filed a third motion to dismiss on October 6, 2014. (ECF No. 60.) On March 4, 2015, the Court granted the third motion to dismiss. (ECF No. 69.) The Court explained that it appeared that the matter was not capable of resolution by way of a motion to dismiss:

> The court is of the opinion that Plaintiffs are not going to allege facts that allow for adequate analysis of their claims in any future complaints because they have not done so to date. … It is this court's opinion that the only way there will be sufficient information before this court to permit any dispositive analysis of the Parties' rights and obligations will be if the court is free to consider competent evidence outside the [Second Amended Complaint] or any further amendment thereof and Defendants are similarly free to raise any and all relevant defenses to Plaintiffs' claims. The court, it is anticipated, will also cease unnecessarily expending time and resources on ambiguously pled claims and insufficient motions to dismiss.

(Id. at 9-10.)

On March 11, 2015, Plaintiffs filed the TAC – the operative complaint in this matter. Defendants filed an answer and counterclaim on March 25, 2015. (ECF No. 75.) At that time, the parties consented to Magistrate Judge jurisdiction, and the matter was

---

[1] The second amended complaint was materially different from the proposed second amended complaint presented in the motion to amend.

1   reassigned to the undersigned, United States Magistrate Judge Michael Seng, on April
2   16, 2015. (ECF No. 79.)

3       Defendants filed the instant motion for summary judgment on July 17, 2015.
4   (Mot. for Summ. J. ["MSJ"], ECF No. 88.) Plaintiffs filed an opposition to the MSJ on
5   July 31, 2015, and Defendants filed a reply on August 7, 2015. (Opp'n, ECF No. 93;
6   Reply, ECF No. 100.)

7       Defendants also filed motion for a protective order to prevent Plaintiffs from
8   engaging in further discovery. (Mot. for Protective Order, ECF No. 87.)   Plaintiffs filed
9   an opposition to the motion on July 31, 2015, and Defendants filed a reply on August 7,
10  2015. (Opp'n, ECF No. 92; Reply, ECF No. 102.) The Court deemed the matters
11  submitted without oral argument on August 10, 2015. (ECF No. 104) The motions stand
12  ready for adjudication.

13  **II.**    **LEGAL FRAMEWORK OF CLAIMS AND FACTUAL BACKGROUND**

14      **A.**    **MPPAA and Withdrawal Liability**

15      The core issue in this case is whether Plaintiffs are liable for withdrawal liability
16  under the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA").[2] In order
17  to establish whether withdrawal liability may be owed, the MPPAA provides that:

18       "an employer [that] withdraws from a multiemployer plan in a complete
         withdrawal or a partial withdrawal . . . is liable to the plan in the amount
19       determined under this part to be the withdrawal liability." 29 U.S.C. §
         1381(a). A complete withdrawal occurs when an employer "permanently
20       ceases to have an obligation to contribute under the plan, or . . .
         permanently ceases all covered operations under the plan."
21

22  29 U.S.C. § 1383.

23      "Congress enacted the MPPAA to protect the financial solvency of multiemployer
24  pension plans." Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp.,
25  522 U.S. 192, 196 (1997).   The following overview of withdrawal liability under the

26  _____

27  [2] As described in detail below, the MPPAA dictates the determination as to withdrawal liability is to be
    made by an arbitrator, subject to judicial review. See 29 U.S.C. § 1401(a)(1). This Court may determine
28  jurisdictional issues such as whether there is standing to assert the claim under the MPPAA, but, if there
    is standing, the ultimate determination of liability is left to arbitration.

MPPAA is provided as a framework for evaluation of the competing claims in this case:

> MPPAA helps solve a problem that became apparent after Congress enacted the Employee Retirement Income Security Act of 1974 (ERISA), 88 Stat. 829, 29 U.S.C. § 1001 et seq. ERISA helped assure private-sector workers that they would receive the pensions that their employers had promised them. See, e. g., Concrete Pipe & Products of Cal., Inc. v. Construction Laborers Pension Trust for Southern Cal., 508 U.S. 602, 605-609, 124 L. Ed. 2d 539, 113 S. Ct. 2264 (1993). To do so, among other things, ERISA required employers to make contributions that would produce pension plan assets sufficient to meet future vested pension liabilities; it mandated termination insurance to protect workers against a plan's bankruptcy; and, if a plan became insolvent, it held any employer who had withdrawn from the plan during the previous five years liable for a fair share of the plan's underfunding. See 26 U.S.C. § 412 (minimum funding standards); 29 U.S.C. § 1082 (same); 29 U.S.C. § 1301 et seq. (termination insurance); 29 U.S.C. § 1364 (withdrawal liability).
>
> Unfortunately, this scheme encouraged an employer to withdraw from a financially shaky plan and risk paying its share if the plan later became insolvent, rather than to remain and (if others withdrew) risk having to bear alone the entire cost of keeping the shaky plan afloat. Consequently, a plan's financial troubles could trigger a stampede for the exit doors, thereby ensuring the plan's demise. See Connolly v. Pension Benefit Guaranty Corporation, 475 U.S. 211, 216, 89 L. Ed. 2d 166, 106 S. Ct. 1018 (1986); Pension Benefit Guaranty Corporation v. R. A. Gray & Co., 467 U.S. 717, 722-723, n. 2, 81 L. Ed. 2d 601, 104 S. Ct. 2709 (1984); see also 29 U.S.C. § 1001a(a)(4); H. R. Rep. No. 96-869, pt. 1, pp. 54-55 (1980); D. McGill & D. Grubbs, Fundamentals of Private Pensions 618-619 (6th ed. 1989). MPPAA helped eliminate this problem by changing the strategic considerations. It transformed what was only a risk (that a withdrawing employer would have to pay a fair share of underfunding) into a certainty. That is to say, it imposed a withdrawal charge on all employers withdrawing from an underfunded plan (whether or not the plan later became insolvent). And, it set forth a detailed set of rules for determining, and collecting, that charge.

Milwaukee Brewery Workers' Pension Plan v. Jos. Schlitz Brewing Co., 513 U.S. 414, 416-417 (1995).

"When an employer withdraws from a plan, the plan remains liable to the employees who have vested pension rights, though it no longer can look to the employer to contribute additional funds to cover these obligations." Carpenters Pension Trust Fund v. Moxley, 734 F.3d 864, 869-870 (9th Cir. 2013) (citing Chi. Truck Drivers, Helpers & Warehouse Workers Union (Indep.) Pension Fund v. CPC Logistics, Inc., 698 F.3d 346, 347-49 (7th Cir. 2012). "Even when, upon an employer's withdrawal, that employer and every other participating employer has made every contribution that

ERISA required of them, the plan may nonetheless be underfunded, resulting in withdrawal liability for the departing employer." Id. at 869-70 (citing In re CD Realty Partners, 205 B.R. 651, 658 n.8 (Bankr. D. Mass. 1997)). "Withdrawal liability is imposed by ERISA to account for the pension fund's needs going forward, and therefore is distinct from the contributions required to be made by the plan agreements." Id.

When disputes arise over withdrawal liability under the MPPAA they are to be resolved through arbitration. 29 U.S.C. § 1401(a)(1). See Board of Trustees of the Constr. Laborers' Pension Trust v. M.M. Sundt Constr. Co., 37 F.3d 1419, 1420 (9th Cir. 1994). The arbitration clause is not a jurisdictional prerequisite to federal court review, but it is a requirement for exhaustion of administrative remedies. Id. Disputed matters "concerning a determination" of withdrawal liability "between an employer and the plan sponsor," must be dismissed by the court for failure to exhaust arbitration requirements under 29 U.S.C. § 1401(a)(1). Id. at 1420.

The MPPAA amends ERISA, and the preemptive power of ERISA applies to actions under the MPPAA. ERISA's purpose is to provide "a uniform regulatory regime over employee benefit plans," and "includes expansive pre-emption provisions ... which are intended to ensure that employee benefit plan regulation would be exclusively a federal concern." Aetna Health Inc. v. Davila, 542 U.S. 200, 208 (2004) (internal citations omitted). "Therefore, any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." Aetna Health, 542 U.S. at 209.

### B.    Factual Background

The available factual information is relatively sparse. Plaintiffs are family run dairies with their principal places of business in California. (See FAC at ¶ 3.) Plaintiffs contend that they never signed any **binding** agreements, including collective bargaining agreements, with the CLA Union or the Pension Fund. (Id. at ¶ 8.) Plaintiffs Irigaray and North Star admit that they signed agreements, but claim that they unknowingly signed

"after-the-fact, illegal and void" collective bargaining agreements shortly before withdrawing from making contributions to the Pension Fund. Plaintiffs Jongsma and Van Der Kooi claim that they never signed any agreements binding them to make contributions to Defendants. (Id.) Regardless, all the Plaintiffs admit that **for decades** they made contributions to Defendants for the benefit of their employees, and that Defendants accepted the contribution payments. (FAC at ¶ 8; Statement of Undisputed Facts, ECF No. 94 at ¶ 6.))

In March 2013, Defendants asserted a claim against Plaintiffs for withdrawal liability based on their failure to continue to contribute to the Pension Fund.[3] (Kirchner Decl., ¶ 8.) In response, Plaintiffs initiated arbitration to challenge various aspects of the withdrawal liability claims. (Kirchner Decl., ¶ 8; Statement of Undisputed Facts, ECF No. 94 at ¶ 6.) The arbitration proceeding has been held in abeyance during the pendency of this proceeding. (Id.)

Plaintiffs dispute the six statements of fact set forth by Defendants. (Statement of Undisputed Facts, ECF No. 94.):

Defendants assert, first, that the Pension Fund is a plan under ERISA and the MPPAA. (Id. at ¶ 1.) Plaintiffs dispute this claim and contend that since Defendants were operating illegally, they did not constitute a valid plan. (Id.)

Defendants next assert that Plaintiffs are employers under ERISA. (Id. at ¶ 2.) Plaintiffs claim they are not employers because ALRB elections never occurred at the dairies, and that Defendants have not established that Plaintiffs are bound as successor dairies to union contracts. (Id.)

Next, Defendants state that Plaintiffs were required to make contributions based on the Master Labor Agreements with the CLA Union. (Id. at ¶ 3.) Plaintiffs dispute the fact, again asserting that no ALRB election was held, that the labor agreements violated

---

[3] Ms. Kirchner, in her declaration, stated that the Pension Fund assessed withdrawal liability against three of the four Plaintiff Dairies (Cow West was not included). However, in Defendants answer and counterclaim, they assert that they assessed withdrawal liability against all Plaintiffs. (See Answer, ECF No. 75 at 48.) The Court will consider the omission as an oversight.

1  California labor law, and that with respect to Defendant Irigaray, he did not read or
2  speak English or remember signing the agreement. (Id.)

3      As fact number four, Defendants contend that Plaintiffs, did, in fact, make
4  contributions to the Pension Fund on behalf of their employees. (Id. at ¶ 4.) Plaintiffs
5  dispute that they made contributions on behalf of all of their employees, but admit that
6  they made contributions on behalf of some of them. (Id.)

7      Defendants contend, as fact five, that over the last fifteen years, around 50
8  employers participated in the Pension Fund, and at least a dozen employers are still
9  participating in the Pension Fund. (Id. at ¶ 5.) Plaintiffs argue the fact is not relevant to
10 the action. (Id.)

11     Finally, Defendants contend that Plaintiffs initiated arbitration. (Id. at ¶ 6.)
12 Plaintiffs object that fact also is irrelevant because the arbitration matter has been
13 stayed during the pendency of this litigation. (Id.)

14     The Court will address relevant factual disputes as it addresses the merits of this
15 motion.

16 **III.   LEGAL STANDARD**

17     Any party may move for summary judgment, and the Court shall grant summary
18 judgment if the movant shows that there is no genuine dispute as to any material fact
19 and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Wash.
20 Mut. Inc. v. United States, 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position,
21 whether it be that a fact is disputed or undisputed, must be supported by (1) citing to
22 particular parts of materials in the record, including but not limited to depositions,
23 documents, declarations, or discovery; or (2) showing that the materials cited do not
24 establish the presence or absence of a genuine dispute or that the opposing party
25 cannot produce admissible evidence to support the fact. Fed R. Civ. P. 56(c)(1). The
26 Court may consider other materials in the record not cited to by the parties, but it is not
27 required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist.,
28 237 F.3d 1026, 1031 (9th Cir. 2001).

1    Plaintiff bears the burden of proof at trial, and to prevail on summary judgment,

2    he must affirmatively demonstrate that no reasonable trier of fact could find other than

3    for him. Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007).

4    Defendants do not bear the burden of proof at trial and, in moving for summary

5    judgment, they need only prove an absence of evidence to support Plaintiff's case. In re

6    Oracle Corp. Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010).

7    In judging the evidence at the summary judgment stage, the Court may not make

8    credibility determinations or weigh conflicting evidence, Soremekun, 509 F.3d at 984,

9    and it must draw all inferences in the light most favorable to the nonmoving party and

10   determine whether a genuine issue of material fact precludes entry of judgment. Comite

11   de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th

12   Cir. 2011).

13   **IV.   EVIDENCE PROVIDED AND OBJECTIONS THERETO**

14   The parties have provided copies of the following described evidence in support

15   of and opposition to the motion for summary judgment:

16   **A.   Defense Evidence**

17   1.   Depositions of the owners of three of the four Plaintiff dairies – Henry

18   Jongsma, Jean Antoine Irigaray, and Charles Van Der Kooi (Kirchner

19   Decl., Exs. A-C);

20   2.   Relevant orders from a related case (Kirchner Decl., Exs. D-F);

21   3.   The 2009 trust agreement of the CLA Union ("Trust Agreement") (Kirchner

22   Decl., Ex. G);

23   4.   Master Labor Agreements between the CLA Union and the Defendants

24   (Marquez Decl., Exs. A-D);

25   5.   A May 1977 petition for certification and tally of ballots electing the CLA

26   Union to represent all employees of the Harold Jongsma Dairy (Marquez

27   Decl., Ex. E);

28   ///

9

6. A May 1977 petition for certification and tally of ballots electing the CLA Union to represent all employees of the Kooi Holstein Dairy[4] (Marquez Decl., Ex. F); and

7. An authorization dated March 31, 1977 by Harold Jongsma providing authority to the Producer Bargaining Committee to represent his dairy in labor relation matters.

**B.    Plaintiffs' Evidence**

1. The July 21, 2015 decision of the arbitrator denying a motion to stay the arbitration matter pending a decision of the court (Weiland Decl., Ex. A);

2. Depositions of owners and agents of Defendants (Weiland Decl., Exs. B-F); and

3. Depositions of two of the trustees of the Pension Fund – Ascencion Marquez and Daryl Koops (Sagaser Decl., Exs. A-B).

Despite the volume of evidence provided, neither side refers to much of it specifically in support of its positions on the facts relevant to this motion. Rather than independently review all the evidence, the Court will address the objections to that which it deems necessary to resolution of this motion for summary judgment.

**C.    Plaintiff's Objections**

Plaintiffs present multiple evidentiary objections to each of the documents presented by Defendants. The objections in effect argue the ultimate issue in this case. They claim that the documents reflect agreements which are not binding on Plaintiff's and which therefor are irrelevant or otherwise inadmissible. The objections verge on frivolousness and are, in any event, overruled as set forth below:

**1.    Trust Agreement**

Plaintiffs object to the Trust Agreement based on hearsay, lack of personal knowledge, lack of foundation, improper opinion, improper legal conclusion, and

---

[4] It appears that the Kooi Holstein was a predecessor to the Charles Van Der Kooi Dairy.

1  improper speculation. (ECF No. 95 at 4-5.) Plaintiffs do not elaborate on their
2  objections.

3      Attorney Kirchner, counsel for the Pension Fund, declares under penalty of
4  perjury that the she has presented a true and correct copy of the Trust Agreement from
5  her law firm's client file maintained by the firm in the course of its regularly conducted
6  business activities. (Kirchner Decl. at ¶ 9, ex. G.) The Trust Agreement is a
7  comprehensive 115 page document detailing the operation and management of the
8  Pension Fund. (Id.) It discusses topics including eligibility for participation in the Plan,
9  payments to be provided upon retirement or early retirement, form of payment of
10 benefits, obligations to contribute to the Plan by Employers, administration of the Plan
11 by the trustees, determination and collection of withdrawal liability, and amendments
12 and termination of the Plan. (Id.)

13     Kirchner's statements in her declaration establish personal knowledge sufficient
14 to establish a foundation necessary to present the document in question. Fed. R. Evid.
15 602.

16     Plaintiffs also contend that the Agreement is hearsay. Hearsay is "a statement
17 other than one made by the declarant while testifying at the trial or hearing, offered in
18 evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). But "out-of-
19 court statements that are offered as evidence of legally operative verbal conduct are not
20 hearsay." United States v. Pang, 362 F.3d 1187, 1192 (9th Cir. 2004). The Trust
21 Agreement is an operative document, or "verbal act." Operative documents include
22 contracts, commercial paper, and negotiable instruments. They are not hearsay, and
23 therefore need not fall under an exception to hearsay in order to be admitted into
24 evidence. Pang, 362 F.3d at 1192. The Trust Agreement, while an out of court
25 statement, evidences legally operative conduct, namely the operation and management
26 of the Pension Plan.

27     The Court finds no basis for Plaintiffs objection to the Agreement based on
28 improper opinion, legal conclusion, or speculation.

Plaintiffs' objections are overruled. The Court will consider the Trust Agreement as relevant evidence of what it purports to represent - a detailed description of the terms of the plan at issue in this case.

### 2. Master Labor Agreements between the CLA Union and Plaintiffs

Plaintiffs object to the Master Labor Agreements on the same grounds they raised in opposition to the Trust Agreement - hearsay, lack of personal knowledge, lack of foundation, improper opinion, improper legal conclusion, and improper speculation. (See generally, Decl. of Ascencion Marquez, ECF No. 88-11, Exs. A-D; ECF No. 95 at 2-3.) The objections are overruled for the same reasons they were overruled in connection with the Trust Agreement.

Marquez states in his declaration that he has been a Trustee for the Pension Fund and the president of the CLA Union for many years. (Marquez Decl., ¶ 1.) He is familiar with the business records and record-keeping practices of the CLA Union and the Pension Fund. (Id. at ¶ 2.) He avers that the Master Labor Agreements are maintained in the Pension Fund's files in the course of its normal and regular business practices. (Id. at ¶¶ 3-6.)

Marquez has established he has personal knowledge as a longstanding trustee of the Petition Fund to establish the foundation to present the documents in question. Fed. R. Evid. 602. The agreements are contracts, not hearsay, and do not need to fall under an exception to hearsay in order to be admitted into evidence. Pang, 362 F.3d at 1192. The objections for opinion, legal conclusion, and speculation are also overruled. Marquez did not present any opinions, legal conclusions, or speculative statements. He laid a foundation based on his personal knowledge regarding the documents being kept in Pension Fund's files as a normal and regular business practice.  He presents no interpretation of the agreements. They are what they say they are, subject to Plaintiff's right to try to show otherwise.  Plaintiffs' objections are without merit.

///

### 3. Jongsma Agreement

Plaintiffs specifically object to the Master Labor Agreement with Jongsma & Sons Dairy on the additional grounds that it is vague and ambiguous because it is an agreement with "Jongsma & Sons Dairy," not "Henry Jongsma & Sons Dairy," the actual party to the action. (ECF No. 95 at 2.)

The Court lacks evidence to enable it to determine if the dairies are separate entities or one in the same. Nevertheless, whether the agreement is binding on Defendant Jongsma is a legal and factual issue, not an issue of admissibility. The agreement is admissible as evidence of a purported labor agreement between the CLA Union and an employer seemingly related to Defendant Jongsma and perhaps, depending on what the evidence ultimately shows, with that Defendant specifically.

### D. Defendants Objections

Defendants also object to the evidence presented by Plaintiffs.

### 1. Wieland Declaration.

Defendants object to the declaration of Attorney Wieland relating to whether questions of standing are to be addressed by the Court or at arbitration. (ECF No. 101.) The objections are sustained.  Questions of standing are matters of law, and no factual evidence is here needed by the Court to address that issue.

### 2. Hank Jongsma Testimony

Defendants object to Hank Jongsma's testimony that his father told him they contributed to the Pension Fund only because union employees would not pick up their milk if they did not. (Wieland Decl., ECF No. 96, Ex. B.) The statement is hearsay and, as to what union employees allegedly said, hearsay on hearsay, all apparently presented for the truth of the matter asserted. The objection is sustained.

### 3. Darin Ferreira's testimony

Defendants' objections to Darin Ferreira's testimony are granted in part and denied in part. (Wieland Decl., ECF No. 96, Ex. C.) His testimony that the CLA Union and the Pension Fund have been comingling funds, absent further foundation, is

13

1    impermissible speculation or, perhaps, unqualified opinion testimony. However, his
2    statements that he mailed checks to the union and to the Pension Fund at the same
3    address is based on his personal knowledge; Defendants' objection to that testimony is
4    overruled.

5                    **4.    Jean Irigaray's Testimony**

6         Defendants object to Jean Irigaray's testimony on the grounds that he does not
7    read or write in English.  Even if true, illiteracy does not foreclose one having the written
8    word read and adopted. The objection is overruled. (Wieland Decl., ECF No. 96, Ex. D.)

9                    **5.    Other Objections**

10        The remaining objections by Defendants claim Plaintiffs' declarations are vague
11   and ambiguous since Plaintiffs have not referred in their motion papers to specific
12   testimony from the declarations. The Court need not address these objections. The
13   Court will rely only on the evidence cited by the parties. See Fed. R. Civ. P. 56(c). It will
14   not unilaterally review hundreds of pages of deposition transcripts to see if they might
15   contain information relevant to this motion. While a Court may consider uncited
16   materials, it has no obligation to do so. Id. at 56(c)(3); Stanislaus Food Prods. Co. v.
17   USS-POSCO Indus., 803 F.3d 1084 (9th Cir. 2015) ("[C]ourts need not examine the
18   entire file for evidence establishing a genuine issue of fact, where the evidence is not
19   set forth with adequate references so that it could conveniently be found.") (internal
20   citation omitted).

21   **V.    ANALYSIS**

22        At the outset, the Court must determine whether jurisdiction exists.

23        Plaintiffs bring claims under the Declaratory Relief Act and two claims for
24   affirmative relief. With respect to declaratory judgment claims, "it is settled law that "[t]he
25   operation of the Declaratory Judgment Act is procedural only" and does not confer
26   subject matter jurisdiction. California Shock Trauma Air Rescue v. State Comp. Ins.
27   Fund, 636 F.3d 538, 543 (9th Cir. 2011) (citing Skelly Oil Co. v. Phillips Petroleum Co.,
28   339 U.S. 667, 671, 70 S. Ct. 876, 94 L. Ed. 1194 (1950)). As such, courts look to the

1   subject matter of the underlying dispute to determine jurisdiction over declaratory

2   judgment claims. <u>Medtronic, Inc. v. Mirowski Family Ventures, LLC</u>, 134 S. Ct. 843, 848,

3   187 L. Ed. 2d 703 (2014). ("The relevant question concerns the nature of the threatened

4   action in the absence of the declaratory judgment suit.")

5        The subject matter of the declaratory relief claim is withdrawal liability under the

6   MPPAA. To determine whether there is jurisdiction to assert a claim of withdrawal

7   liability the Court must determine if the Pension Fund is governed by ERISA and the

8   MPPAA. The Court must also determine whether Defendants are "employers" under the

9   MPPAA. Plaintiffs claim federal question jurisdiction is based on ERISA.  If the Pension

10   Fund is not governed by ERISA, this Court would lack jurisdictional authority to

11   adjudicate the dispute. (<u>See</u> TAC at ¶ 2). Additionally, ERISA and the MPPAA create

12   statutory frameworks that limit and control the various actions and defenses the parties

13   may assert.

14   **A.      Is the Plan Covered by ERISA?**

15           **1.      Legal Standard**

16   ERISA defines a pension plan as:

17       [A]ny plan, fund, or program . . . established or maintained by an employer
    . . . to the extent that by its express terms or as a result of surrounding
18       circumstances such plan, fund, or program -

19       (i) provides retirement income to employees, or

20       (ii) results in a deferral of income by employees for periods extending to
    the termination of covered employment or beyond, regardless of the
21       method of calculating the contributions made to the plan, the method of
    calculating the benefits under the plan or the method of distributing
22       benefits from the plan.

23   29 U.S.C. § 1002(2)(A).

24        An ERISA plan exists if, from the surrounding circumstances, "a reasonable

25   person could ascertain the intended benefits, beneficiaries, source of financing, and

26   procedures for receiving benefits." <u>Golden Gate Rest. Ass'n v. City & County of San</u>

27   <u>Francisco</u>, 546 F.3d 639, 651 (9th Cir. 2008) (quoting <u>Donovan v. Dillingham</u>, 688 F.2d

28   1367, 1373 (11th Cir. 1982)). The Ninth Circuit has regularly relied on the above criteria

from Donovan. See Scott v. Gulf Oil Corp., 754 F.2d 1499 (9th Cir. 1985); Modzelewski v. Resolution Trust Corp., 14 F.3d 1374 (9th Cir. 1994); Winterrowd v. American General Annuity Ins. Co., 321 F.3d 933 (9th Cir. 2003).

"An ERISA plan fulfilling these requirements need not be in any particular form, nor need it be in an official plan document." Alday v. Raytheon Co., 693 F.3d 772, 782 (9th Cir. 2012). Because ERISA's definition of a pension plan is so broad, virtually any contract that provides for some type of deferred compensation will also establish a de facto pension plan, whether or not the parties intended to do so. Modzelewski v. Resolution Trust Corp., 14 F.3d 1374, 1377 (9th Cir. 1994). "Very few offers to extend benefits will fail the test laid out in Donovan, which requires neither formalities nor elaborate details." Winterrowd, 321 F.3d at 939.

The existence of an ERISA plan is a question of fact, to be answered in the light of all the surrounding circumstances from the point of view of a reasonable person. Credit Managers Ass'n v. Kennesaw Life & Accident Ins. Co., 809 F.2d 617, 625 (9th Cir. 1987) (citing Donovan, 688 F.2d at 1373). Explained in a different way:

> A decision to extend benefits is not the establishment of a plan or program. Acts or events that record, exemplify or implement the decision will be direct or circumstantial evidence that the decision has become reality . . . assuring employees that a plan or program exists [for example] - but it is the reality of a plan, fund or program and not the decision to extend certain benefits that is determinative.

Cinelli v. Security Pac. Corp., 61 F.3d 1437, 1442-1443 (9th Cir. 1995) (citing Donovan, 688 F.2d at 1373).

## 2.    Analysis

Plaintiffs challenge nearly every aspect of Defendants' efforts to collect benefits or assert financial liability against Plaintiffs based on unvested pension benefits. In Plaintiffs' TAC, they contend that Defendants "are not a pension fund as defined under ERISA" because improper management of the Pension Fund by the trustees and the CLA Union effectively rendered the purported Plan a nullity. (TAC ¶¶ 13-15; O'ppn at 15-17.) Plaintiffs' allegations of misconduct include:

1    - an employer-side trustee was appointed to the board of the Pension Fund

2    without election;

3    - employer trustees do not actively represent the Plaintiffs' interests;

4    - the Pension Fund failed to have required meetings or required votes necessary

5    to manage the Fund;

6    - the union trustee and Defendants' counsel are acting without authority from the

7    employer trustee, and without a valid vote or other authority or approval, to seek

8    withdrawal liability against Plaintiffs;

9    - the CLA Union and the Trustees of the Union Health & Welfare Fund and

10   Pension Fund shared the same offices and employees;

11   - the records for the CLA Union, the Health & Welfare Fund, and the Pension

12   Fund were comingled;

13   - a trustee of the Pension Fund hired Defendants' counsel to sue member dairies

14   for withdrawal liability for the benefit of the Fund;

15   - Pension Fund correspondence was at times sent out on CLA Union letterhead;

16   - the primary income source for the CLA Union were payments from the Pension

17   Fund and the Health & Welfare Fund;

18   - the CLA Union paid a flat fee to the trust funds to share a common office, staff

19   and filing; and,

20   - Plaintiffs were required to submit checks to the CLA Union, the Health &

21   Welfare Fund and Pension Fund at the same address.[5]

22   (TAC ¶¶ 13-15; O'ppn at 15-17.)

23        Regardless of the truth or falsity of these complaints, they do not call into

24   question the fact that the Fund is an ERISA plan.

25        It is undisputed that the Pension Fund had in its possession documents which

26   purport to be Trust Agreements and Master Labor Agreements with the respective

27   ───────────────────

28   [5] Plaintiffs contend these allegations of mismanagement of the Pension Fund are relevant to other issues in this matter. The Court, as a matter of efficiency, will refer to the allegations generally as the "alleged misconduct" unless specific allegations are raised by relevant and meaningful party argument.

1  Defendants. (See Kirchner Decl., Ex. G; Marquez Decl., Exs. A-D.) A reasonable
2  person reviewing such documents would indisputably determine that the Pension Fund
3  was created with the intention to provide eligible participants benefits in the form of
4  monthly payments upon retirement (specifically, in an amount of $21.00 multiplied by
5  the number of years of credited service of the participant at retirement.)[6] (Kirchner Decl.,
6  Ex. G at 19.) The Trust Agreement obligates the Pension Fund to pay eligible
7  participants monthly benefits commencing on the first day of the month after the
8  participant's retirement. (Kirchner Decl., Ex. G at 20.)    The beneficiaries of the Pension
9  Fund are Defendants' employees as indicated in Article III of the Supplemental
10  Agreement to the Master Labor Agreements between Defendants and the CLA Union.
11  With regard to the source of financing, the Supplemental Agreement required
12  Defendants to provide monthly contributions to the Pension Fund for the benefit of
13  employees. The Trust Agreement also states that contributions will be made to the
14  Pension Fund by Employers. (Kirchner Decl., Ex. G at 49.) Plaintiffs admit in the TAC
15  and deposition testimony that they made contributions to the Pension Fund on behalf of
16  employees.  (TAC at ¶ 8; Statement of Fact, ¶ 4, ECF No. 94.)

17      Based on the foregoing, the records on file with the Pension Fund, and the fact
18  that Defendants made contributions to the Pension Fund on behalf of their employees,
19  the Court finds there is no genuine dispute but that a reasonable person would
20  ascertain that:  employees of Defendants that were members of the CLA union (i.e, the
21  beneficiaries) were entitled to monthly payments upon retirement (i.e., the intended
22  benefit), starting the month after retirement (i.e., the procedure for receiving benefits),
23  that were funded, at least in part, by the contributions by Defendants (i.e., the source of
24  financing). Based on the totality of circumstances, that reasonable person would
25  conclude that the plan meets the Donovan requirements and is covered by ERISA.
26  Golden Gate Rest. Ass'n, 546 F.3d at 651; Donovan, 688 F.2d at 1373.

27
28
[6] This is an over-simplification of the intended benefits of the Pension Fund. The Pension Find also provides for early retirement benefits, disability benefits, and benefits to the surviving spouse of participants. For sake of simplicity, the Court will focus on the terms of the standard retirement payments.

1       Notwithstanding Plaintiffs' complaints about alleged misconduct of the Pension

2  Fund, the Fund is structured in manner consistent with other retirement benefit funds

3  created by and bargained for on behalf of unions for their members. Plaintiffs present no

4  argument that the Pension Fund fails to meet the <u>Donovan</u> requirements to be

5  considered a plan under ERISA plan.

6       Many cases find less formal extensions of benefits from employers to be covered

7  as ERISA plans. In <u>Scott v. Gulf Oil Corp.</u>, the Ninth Circuit concluded that an

8  employer's oral agreement to provide benefits could create a plan under <u>Donovan</u> and

9  gave rise to an ERISA claim. 754 F.2d 1499 (9th Cir. 1985). In <u>Modzelewski v.</u>

10 <u>Resolution Trust Corp.</u>, the Ninth Circuit determined that an employment agreement

11 that contained salary continuation agreements for additional payment upon retirement,

12 death, or termination contained necessary elements of, and qualified as, a pension plan

13 under ERISA. 14 F.3d 1374, 1376-77 (9th Cir. 1994). In <u>Williams v. Wright</u>, 927 F.2d

14 1540 (11th Cir. 1991), the Eleventh Circuit applied the <u>Donovan</u> analysis and concluded

15 a plan was created by a letter from the company president outlining a source of

16 financing, details as to beneficiaries, and procedures for paying and administering

17 benefits. In <u>Cox v. Reliance Std. Life Ins. Co.</u>, the court held that a supplemental

18 insurance plan offered by an employer and purchased by an employee was governed

19 by ERISA, 2013 U.S. Dist. LEXIS 70601 (E.D. Cal. May 16, 2013).

20      Cases where courts have determined that plans are not covered by ERISA

21 usually involve other benefit programs not intended to be covered by ERISA.

22      Unlike the cases described above, the Pension Fund at issue here was

23 specifically drafted and created to function as pension fund under ERISA to provide

24 monetary retirement benefits to CLA Union workers. A reasonable person, upon viewing

25 the Trust Agreement, the labor agreements, and knowing that Defendants were making

26 contributions to capitalize the Pension Fund, would determine that the Fund met the

27 necessary requirements under <u>Donovan</u> to qualify as a plan under ERISA. As noted,

28 many much less formal agreements not even intended to be ERISA plans qualified as

such under <u>Donovan</u>. Here, the documents relating to the plan leave no ambiguity as to the purpose and function of the Pension Fund. Plaintiffs have provided no legal or factual basis for concluding that the Fund does not meet the <u>Donovan</u> requirements.

Instead, Plaintiffs contend that the Pension Fund fails to qualify as a plan under ERISA because it has been improperly managed by the CLA Union and contributions to the fund have been misappropriated by the CLA Union. In support, Plaintiffs contend that Daryl Koops, an employer side trustee of the Pension Fund, was never properly elected to the board of trustees and that the Pension Fund's management and assets were commingled and misappropriated because the CLA Pension Fund, CLA Health and Welfare Fund, and the CLA Union shared the same office and employees and, at times, letterhead. (Opp'n at 15-16.) Even if all those assertions as true, Plaintiffs have provided no legal authority to support a claim that the mentioned conduct would jeopardize the Pension Fund's status as a plan under ERISA.

The Pension Fund qualifies as a plan under ERISA.

## B.    Is the Pension Fund a Multiemployer Plan Under the MPPAA?

Plaintiffs contend that the Pension Fund does not qualify as a Multiemployer Plan under the MPPAA. They argue that the alleged misconduct of the Pension Fund by the trustees and the CLA Union is inconsistent with and prevents qualification and standing as a Multiemployer Plan. (Opp'n at 15-17.)

### 1.    Legal Definition of a Multiemployer Plan Under the MPPAA

A "multiemployer plan" is defined under ERISA and the MPPAA, in relevant part, as a plan:

(A) to which more than one employer is required to contribute,

(B) which is maintained pursuant to one or more collective bargaining agreements between one or more employee organizations and more than one employer, and

(C) which satisfies such other requirements as the Secretary of Labor may prescribe by regulation

<u>See</u> 29 U.S.C. §§ 1002(37) & 1301(a)(3).

1    The Court is not aware of any "other requirements" prescribed by regulation by

2  the Secretary of Labor. Accordingly, only the requirements of 29 U.S.C. 1301(a)(3)(A)

3  and (B) must be satisfied in order for the Pension Fund to be a "multiemployer plan"

4  within the meaning of the MPPAA.

5              **2.    Analysis**

6    Plaintiffs do not address whether the Fund meets the requisite criteria set forth

7  above. It does.

8    Based on the four Master Labor Agreements, there is no genuine dispute but that

9  more than one employer was required to contribute to the plan.  Even assuming as true

10  Plaintiffs' allegation that one of the labor agreements was not with one of the Plaintiff

11  dairies, the evidence provided leaves it undisputed that at least four dairies were

12  required to contribute to the plan based on separate labor agreements with an

13  employee organization.

14    Effectively ignoring the statutory definition in the MPPAA, Plaintiffs contend that

15  mismanagement and misdeeds of Defendants disqualified it from being a Plan under

16  the MPPAA. There is, however, no indication that other factors besides those set forth

17  in the statutory definition are relevant to a determination whether the plan qualifies as a

18  multiemployer plan. Other courts have determined that plans qualify as multiemployer

19  plans on the definition alone. See e.g., N.Y. State Teamsters Conference Pension &

20  Retirement Fund v. UPS, 382 F.3d 272, 274 (2d Cir. N.Y. 2004); Trustees of Colorado

21  Pipe Industry Pension Trust v. Howard Electrical & Mechanical, Inc., 909 F.2d 1379,

22  1380-1381 (10th Cir. 1990) (relying on the definition stated under 29 U.S.C. § 1002(37)

23  (A)).

24    Plaintiffs assert that Alvares v. Erickson and subsequent cases stand for the

25  proposition that structural violations of a pension fund could defeat a plan's attempt to

26  qualify as a multiemployer plan under the MPPAA. 514 F.2d 156, 166 (9th Cir. 1975);

27  see also Burroughs v. Board of Trustees, 542 F.2d 1128, 1131 (9th Cir. 1976); Turner v.

28  International Brotherhood of Teamsters, etc., 604 F.2d 1219, 1227 (9th Cir. 1979). In

those cases, the Ninth Circuit recognized a distinction for the purpose of federal jurisdiction under § 302 of the Labor Management Relations Act, 29 U.S.C. § 186: "structural deficiencies" establish jurisdiction, "fiduciary administration deficiencies," do not. See Turner, 604 F.2d at 1227. None of these cases relate to whether the Pension Fund is a multiemployer plan under the MPPAA. Indeed, they all predate the enactment of the MPPAA.[7]  More importantly, Plaintiffs provide no legal authority suggesting such cases may be relevant to determining whether the Pension Fund qualifies as a multiemployer plan.

Plaintiffs present, as an alternative argument, that the failure to provide for equal representation on the board of the Fund made the payments to the fund illegal as a matter of law. (Opp'n at 14-15, citing Denver Metropolitan Asso. of Plumbing, etc. v. Journeyman Plumbers & Gas Fitters Local No. 3 & Pipefitters Local No. 208, 586 F.2d 1367 (10th Cir. 1978); NLRB v. Amax Coal Co., Div. of Amax, 453 U.S. 322 (1981); Associated Contractors of Essex County, Inc. v. Laborers International Union, 559 F.2d 222, 223 (3d Cir. 1977). To the extent that these cases stand for the proposition that unequal representation on the board of the plan violates sections of the LMRA, Plaintiffs provide no authority to suggest that unequal representation reflects a failure to meet the requirements of a valid multiemployer plan under the MPPAA.

Defendants rebut Plaintiffs' claims that alleged mismanagement and misappropriation by the CLA Union affected the Pension Plan's status as a multiemployer plan under the MPPAA.  Defendants correctly note that the Supreme Court in Amax Coal Co. held that ERISA "does not limit the freedom of a union to try to induce an employer to select a particular § 302(c)(5) trustee." 453 U.S. at 334. It does not limit a union from participating in the choice of employer side representatives.

With regard to Plaintiffs' contention that an employer-side trustee was appointed without election, Defendants note that the Trust Agreement provides that upon the

---

[7] The cases were decided in 1975, 1976, and 1979, respectively. The MPPAA was enacted in 1980.

1    resignation of an employer-side trustee, the remaining employer-side trustees can fill

2    the vacancy "in accordance with such procedures or methods they deem satisfactory."

3    (Kirchner Decl., Ex. G at 52.) There was no election requirement, but even if there were,

4    Plaintiffs have not shown with relevant authority that it would affect Defendants' status

5    as a Multiemployer Plan.

6         Defendants also respond to Plaintiffs' contentions that the Pension Fund acted

7    improperly in sharing office space, filing, and legal services with the CLA Union. They

8    note that ERISA expressly allows for plans to contract or make "reasonable

9    arrangements with a party in interest for office space, or legal, accounting, or other

10   services necessary for the establishment or operation of the plan, if no more than

11   reasonable compensation is paid therefor." See 29 USCS § 1108(b)(2). To the extent

12   Plaintiffs provide case law to the contrary, the cases predate ERISA.

13        None of Plaintiffs' arguments are relevant to the showing that the Pension Fund

14   is a multiemployer plan as defined under  29 U.S.C. §§ 1001(37) & 1301(a)(3). Plaintiffs

15   provided no legal authority to support a finding that the alleged mismanagement and

16   misallocation of Plan asserts they claim is relevant to the validity of a multiemployer

17   plan under the MPPAA. In summary, there is no genuine issue of material fact regarding

18   whether Defendants are a multiemployer plan under the MPPAA and able to maintain a

19   federal action for withdrawal liability under 29 U.S.C. § 1381.

20        **C.    Are Defendants Employers Under the MPPAA?**

21        MPPAA imposes withdrawal liability on an "employer" who withdraws from a

22   multiemployer pension plan. 29 U.S.C. § 1381.[8] The term "employer" means "a person

23   who is obligated to contribute to a plan either as a direct employer or in the interest of

24   an employer of the plan's participants." Resilient Floor Covering Pension Fund v. M&M

25   Installation, Inc., 630 F.3d 848, 851-852 (9th Cir. 2010) (citing cases from  the Second,

26   Sixth , Seventh, Eighth, and Eleventh Circuits).

27   _____

     [8] Section 1381(a) provides: "If an employer withdraws from a multiemployer plan in a complete withdrawal

28   or a partial withdrawal, then the employer is liable to the plan in the amount determined under this part to
     be the withdrawal liability." 29 U.S.C. § 1381(a).

Plaintiffs are silent as to whether they employed members of the CLA Union. They do admit they made contributions to the Pension Fund on behalf of their employees, but assert that they never had an obligation to do so -- because the labor agreements signed by Plaintiffs were illegal and void because they were not prepared in compliance with the requirements of the California Agricultural Labor Relations Act.

There is no dispute that Plaintiffs were direct employers of plan participants. Plaintiffs directly supervised, employed, and paid employees that were members of the CLA Union, and they provided contributions to the Pension Fund on behalf of these employees. Plaintiffs understood that their employees were entitled to receive, and had an expectation to receive, benefits from the Pension Fund; Defendants even moved the Court to provide payments of past contributions directly to their employees. (See TAC at 14.)

Plaintiffs argue that the definition of employer under the MPPAA requires an obligation to contribute, regardless of whether they are direct employers or are contributing in the interest of an employer of plan's participants. (O'ppn at 11-12.) Plaintiffs contend that there are genuine issues of material fact as to whether the collective bargaining agreements between the CLA Union and Plaintiffs created an obligation to contribute because the collective bargaining agreements were not made in accordance with the California Agricultural Labor Relations Act. They contend that Mr. Irigaray does not read or write English, and did not know what he was signing. (Opp'n at 12.) They contend that the purported agreement with Henry Jongsma & Son Dairy actually was with Jongsma & Son Dairy (a dairy primarily owned by Mr. Jongsma's parents) and Defendants have not established that former was a successor to the latter. They also contend the latter agreement was invalid as it was signed before the enactment of the ALRA. (Id. at 12-13.)

Plaintiffs contend that Irigaray Dairy, Charles Van Der Kooi Dairy, and Cow-West Dairy never executed any written agreement obligating any of them to make contributions, that no ALRB elections were held, and that the CLA union was not

certified to represent Plaintiffs' employees.[9]   (Opp'n at 13.)   Plaintiffs further contend that Charles Van Der Kooi Dairy and Cow-West Dairy unknowingly signed after-the-fact, illegal, and void collective bargaining agreements based on misrepresentations by the CLA Union. (Id.)

In determining the proper definition of employer under the MPPAA, the issue is whether a narrower common-law definition of employer (limited to signatory employers) should apply or if a broader definition should be used. The Ninth Circuit adopted the broader definition of employer in Resilient Floor Covering Pension Fund to cover direct employers and those obligated to contribute in the interest of an employer of the plan's participants. 630 F.3d at 851-852. The common law definition of employer was thought to "frustrate the purposes of the MPPAA by encouraging employers to insulate themselves from liability under the MPPAA by entering into agreements under which entities that were not direct employers of a plan's beneficiaries would make pension plan contributions. In such a scenario, the employers could effectively withdraw from a plan by terminating their relationships with the direct employer without incurring withdrawal liability." See Carriers Container Council, Inc. v. Mobile S.S. Assn., Inc.-International Longshoreman's Assoc. etc., 896 F.2d 1330, 1343 (11th Cir. 1990). Regardless, Plaintiffs would be considered employers under the common law definition, "which looks for direct employer-employee relationships (e.g., direct supervision, direct payment)." Cent. States, Southeast & Southwest Areas Pension Fund v. Int'l Comfort Prods., LLC, 585 F.3d 281, 284-285 (6th Cir. 2009) (citing Carriers Container Council, Inc., 896 F.2d at 1343). Plaintiffs admit in the operative complaint that they directly employed persons eligible for benefits under the Pension Fund. Based on that admission alone, Plaintiffs are direct "employers."

---

[9] Plaintiffs' repeat this assertion as a basis for many of the claims asserted in their TAC and as a reason why summary judgment in favor of Defendants is not proper. But Plaintiffs have not provided any evidence that the CLA union was not properly certified under the ALRB to represent Plaintiffs' employees. Plaintiffs assert that they were not allowed to conduct discovery into the on alleged improper conduct of Defendants, but they do not claim they were limited in seeking evidence in support of the claim of lack of certification. Plaintiffs have not met the requirements of Fed. R. Civ. P. 56(c). Nevertheless, as explained, the matter is capable of resolution even if Plaintiffs' assertions were deemed to be true.

1    Plaintiffs argue that there is a genuine dispute as to whether they were obligated

2    to contribute, and so summary judgment should be denied. Whether or not Plaintiffs had

3    an obligation to contribute is a matter committed to arbitration. The obligation to

4    contribute is set forth under § 4212(a) of ERISA.[10] 29 U.S.C. § 1392(a); Laborers Health

5    & Welfare Trust Fund v. Advanced Lightweight Concrete Co., 484 U.S. 539, 546 (1988);

6    Cent. States, Southeast & Southwest Areas Pension Fund, 585 F.3d at 286. The

7    MPPAA states unambiguously that "any dispute between an employer and the plan

8    sponsor . . . concerning a determination made under sections 1381 through 1399 . . .

9    shall be resolved through arbitration." Teamsters Pension Trust Fund-Bd. of Trustees of

10   W. Conference v. Allyn Transp. Co., 832 F.2d 502, 504-06 (9th Cir. 1987). Plaintiffs

11   dispute arises from the statutory language of 29 U.S.C. § 1392(a), and to the extent that

12   Plaintiffs assert a defense to withdrawal liability based on the lack of obligation to

13   contribute, the defense must first be raised at arbitration.

14   Plaintiffs are employers under the MPPAA. The Pension Fund is a "plan" under

15   ERISA. It is a "multiemployer plan" under the MPPAA.   Defendants are "employers."

16   The Court thus finds that there is federal question jurisdiction for Plaintiffs to assert a

17   declaratory relief claim challenging withdrawal liability.

18       **D.   Declaratory Relief Claim**

19   Plaintiffs, in their first claim for relief, request the Court to declare: (1) that

20   Defendants are not entitled to assert claims of withdrawal liability against Plaintiffs; (2)

21   that the arbitration clause governing disputes over withdrawal liability in the trust

22   agreement is unconscionable and contrary to federal law; and (3) that the trust fund

23   must remit directly to Plaintiffs' employees the contributions previously paid to the

24   Pension Fund. (TAC at 14.)  To determine if summary judgment is proper with regard to

25

26   [10] "For purposes of this part, the term 'obligation to contribute' means an obligation to contribute arising --
(1) under one or more collective bargaining (or related) agreements, or

27   (2) as a result of a duty under applicable labor-management relations law, but  does not include an
obligation to pay withdrawal liability under this section or to pay delinquent contributions." 29 U.S.C. §

28   1392(a).

1   this claim, the Court must determine whether federal jurisdiction exists as to each sub-

2   claim, whether the alleged acts of mismanagement of Defendants serve as affirmative

3   defenses to withdrawal liability, and whether the defenses to withdrawal liability must

4   first be exhausted by way of arbitration. The Court will address each issue in turn.

5                    **1.      Article III Standing**

6                        **a.      Legal Standard**

7        The Declaratory Relief Act does not create new substantive rights; it merely

8   expands the remedies available in federal court. Shell Gulf of Mex. v. Ctr. For Biological

9   Div., 771 F.3d 632, 635 (9th Cir. 2014). "To determine whether a declaratory judgment

10  action presents a case or controversy, courts consider whether the facts alleged, under

11  all the circumstances, show there is a substantial controversy between parties having

12  adverse legal interests of sufficient immediacy and reality to warrant issuance of a

13  declaratory judgment." Id.; MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127

14  (2007).[11] To determine whether the parties have adverse legal interests, the court must

15  first identify the law underlying the request for a declaratory judgment and then identify

16  the adverse legal interests arising from that law. Id. at 636. "It is necessary to first

17  examine the underlying law because the Declaratory Judgment Act only creates new

18  remedies, and therefore, the adverse legal interests required by Article III must be

19  created by the authority governing the asserted controversy between the parties." Shell

20  Gulf of Mex. Inc., 771 F.3d at 635 (9th Cir. 2014). ("A party's legal interest must relate to

21  an actual 'claim arising under federal law that another asserts against him[.]'" (citing

22  Tex. v. Homeowners Ass'n for Values Essential to Neighborhoods, 915 F.2d 167, 171

23  (5th Cir. 1990)).

24       Plaintiffs must demonstrate "standing separately for each form of relief sought."

25  Mayfield v. United States, 599 F.3d 964, 969 (9th Cir. 2010) (citing Friends of the Earth,

---

[11] While described in the context of standing, the same issues may be framed in a ripeness analysis. Mont. Envtl. Info. Ctr. v. Stone-Manning, 766 F.3d 1184, 1189 (9th Cir. 2014) ("[I]n many cases, ripeness coincides squarely with standing's injury in fact prong" and "the ripeness inquiry is often treated under the rubric of standing.").

1   Inc. v. Laidlaw Envtl. Serv., Inc., 528 U.S. 167, 185 (2000)) "[A] plaintiff who has

2   standing to seek damages for a past injury, or injunctive relief for an ongoing injury,

3   does not necessarily have standing to seek prospective relief such as a declaratory

4   judgment." Id. The constitutional requirements for standing under Article III are

5   jurisdictional, cannot be waived by any party, and may be considered *sua sponte*.

6   Sturgeon v. Masica, 768 F.3d 1066, 1071 (9th Cir. 2014).

7                                **b.      Analysis**

8           Plaintiffs have standing to request declaratory relief with regard to withdrawal

9   liability. Defendants, upon completion of the arbitration proceeding, have federal

10  statutory authority to bring an action challenging or enforcing an arbitration award for

11  withdrawal liability against Plaintiffs under the MPPAA. 29 U.S.C. § 1401(b)(2) ("Upon

12  completion of the arbitration proceedings in favor of one of the parties, any party thereto

13  may bring an action, no later than 30 days after the issuance of an arbitrator's award, in

14  an appropriate United States district court in accordance with section 4301 [29 USCS §

15  1451] to enforce, vacate, or modify the arbitrator's award."). The MPPAA serves as a

16  proper basis for federal jurisdiction had Defendants asserted relief in an affirmative suit.

17  Shell Gulf of Mex. Inc., 771 F.3d at 635. Federal courts have regularly invoked federal

18  jurisdiction with regard to claims of withdrawal liability. See e.g., Milwaukee Brewery

19  Workers' Pension Plan, 513 U.S. at 415; Resilient Floor Covering Pension Fund v. M&M

20  Installation, Inc., 630 F.3d 848, 849 (9th Cir. 2010).

21          In addition to the existence of federal authority to assert a claim for withdrawal

22  liability, the potential injury here was imminent. There is evidence that Defendants

23  sought to enforce withdrawal liability and that the parties are presently arbitrating the

24  dispute. The injury is not abstract, but imminent, and the Court has standing to provide

25  declaratory relief with regard to the claim. MedImmune, Inc., 549 U.S. at 127.

26          Plaintiffs also request the Court provide declaratory relief with regard to whether

27  they are bound to the terms of the arbitration agreement governing Plaintiffs' withdrawal

28  liability. Federal jurisdiction allows for Plaintiffs to challenge an arbitration award

1    regarding withdrawal liability. 29 U.S.C. § 1401(b). As the matter is presently being

2    arbitrated, there is sufficient immediacy to provide standing for the Court to address

3    Plaintiffs' claim of declaratory relief with regard to the terms of arbitration arrangement.

4          Plaintiffs, in their final claim for declaratory relief, ask the Court to order

5    Defendants to remit directly to Plaintiffs' employees the contributions previously paid to

6    Defendants. This last claim for relief, unlike the previous two, does not relate to the

7    issue of whether withdrawal liability exists or not; it focuses on how allegedly mistakenly

8    paid payments are to be refunded.  There is no present dispute on that topic.  Mayfield,

9    599 F.3d at 969. Defendants point out that ERISA has a statutory scheme for the return

10    to the employer of mistakenly paid contributions. See 29 U.S.C. § 1103(c)(2).

11          Standing must exist separately for each form of relief sought.  Plaintiffs have not

12    identified law supporting their request for declaratory judgment on this last issue. Shell

13    Gulf of Mex., 771 F.3d at 635. Because there is no legal basis for the claim, Plaintiffs

14    have not shown that there are "adverse legal interests of sufficient immediacy and

15    reality to warrant issuance of a declaratory judgment." MedImmune, Inc., 549 U.S. at

16    127. While Plaintiffs assert that the contributions should have never been paid, they

17    have not presented evidence that Defendants threatened action adverse to Plaintiffs

18    relating to past contributions. No case and controversy exists. Plaintiffs lack standing to

19    assert their third claim for relief for declaratory relief. That claim is hereby dismissed sua

20    sponte. Sturgeon, 768 F.3d at 1071.

21          **2.    Analysis**

22              **a.    Withdrawal Liability**

23          Plaintiffs request the Court declare that they have no legal obligation to make

24    withdrawal liability payments to Defendants. Defendants, in turn, bring the instant

25    motion for a finding claiming that there is no genuine dispute but that Plaintiffs are liable

26    for withdrawal liability. They contend that any procedural defect, including whether the

27    CLA Union was certified as required by the California Agricultural Labor Relations Act

28    ("ALRA"), does not, as a matter of law, serve as a defense to withdrawal liability under

1  the MPPAA.

2      The core issue, then, is whether any of Plaintiffs' assertions[12] raise genuine

3  issues of material fact and prevent judgment for Defendants as a matter of law.

4      The Ninth Circuit has made clear that withdrawal liability is a statutory obligation

5  "that is imposed because the employer no longer has a contractual obligation to

6  contribute." Carpenters Pension Trust Fund v. Moxley, 734 F.3d 864, 869 (9th Cir.

7  2013) (contrasting withdrawal lability with contributions which are "contractual

8  obligations that ERISA enforces, but does not create.") "[W]ithdrawal liability is imposed

9  by ERISA to account for the pension fund's needs going forward and therefore is distinct

10 from the contributions required to be made by the plan agreements." Id.

11     MPPAA provides for certain enumerated defenses to withdrawal liability. For

12 example, employers are not liable for withdrawal liability for: certain changes in the

13 employer's corporate structure (29 U.S.C. § 1398(1)); failing to contribute during a labor

14 dispute (29 U.S.C. § 1398(2)); or for certain industry specific actions relating to building

15 and construction, entertainment, or trucking (29 U.S.C. § 1383). Plaintiffs do not seek to

16 invoke any of the statutory defenses provided under the MPPAA. Indeed, no statutory

17 basis exists for the defense, and to the extent Plaintiffs seek to assert defenses based

18 on state law, they are pre-empted. Aetna Health Inc. v. Davila, 542 U.S. 200, 209

19 (2004). ("[A]ny state-law cause of action that duplicates, supplements, or supplants the

20 ERISA civil enforcement remedy conflicts with the clear congressional intent to make

21 the ERISA remedy exclusive and is therefore pre-empted."); Girl Scouts of Middle

22 Tenn., Inc. v. Girl Scouts of the U.S.A., 770 F.3d 414, 419 (6th Cir. 2014) (state law

23 claims based on breach of contract and fiduciary duty against the union were

24 preempted).

25 _____

26 [12] Plaintiffs' assertions include, but are not limited to: claims that the CLA Union was never certified to
   represent Plaintiffs' employees under California law; that there was never any written agreements
   between Plaintiffs and Defendants to provide contributions; that Plaintiffs never entered into collective

27 bargaining agreements with Defendants and at no time were Plaintiffs' employees represented by the
   CLA Union; that Plaintiffs never agreed to be bound by the Trust Agreement; and that the trust agreement

28 has an unconscionable arbitration clause. (TAC ¶¶ 26-41.)

Since there is no federal statutory authority for the asserted defenses and state law defenses are preempted, the Court must determine whether Plaintiffs' alleged grounds for avoiding withdrawal liability can be effective under Federal common law.

"At the time of ERISA's enactment, Congress in general encouraged the courts to develop a federal common law of employee benefits because many issues relating to employee benefits would arise where there would be no specific rule to govern the question." Digeronimo Aggregates, LLC v. Zemla, 763 F.3d 506, 510-511 (6th Cir. 2014) (citing Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 24 n.26 (1983)). "Federal courts are to develop a 'federal common law of rights and obligations under ERISA-regulated plans' to fill the interstices of the statute." Girl Scouts of Middle Tenn., Inc., 770 F.3d at 420 (citing Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 110 (1989)).

The Supreme Court has recognized that the creation of federal common law is an "unusual exercise of lawmaking which should only be indulged in a few and restricted instances." Id. (citing Milwaukee v. Illinois, 451 U.S. 304, 313-14 (1981)). In general, the "authority to create federal common law in this area is restricted to instances in which (1) ERISA is silent or ambiguous; (2) there is an awkward gap in the statutory scheme; or (3) federal common law is essential to the promotion of fundamental ERISA policies. Digeronimo Aggregates, LLC, 763 F.3d at 511. Plaintiffs provide the Court no basis for a finding that any of these three instances exist here.

The statutory framework for withdrawal liability under the MPPAA provides certain enumerated defenses. Had Congress intended to create a defense to withdrawal liability for employers based on technical deficiencies in formation or operation of a Fund, it could have done so. Inasmuch as ERISA and the MPPAA create a comprehensive legislative scheme governing contributing employers and multiemployer plans - including an integrated system of procedures for enforcement regarding withdrawal liability - a strong presumption exists that Congress deliberately omitted the availability of such a defense. See Digeronimo Aggregates, LLC, 763 F.3d at 512;

1   Northwest Airlines v. Transp. Workers Union, 451 U.S. 77, 97 (1981) ("The presumption
2   that a remedy was deliberately omitted from a statute is strongest when Congress has
3   enacted a comprehensive legislative scheme including an integrated system of
4   procedures for enforcement.").

5          Further, there is no awkward gap in the statutory scheme that would be alleviated
6   by Plaintiffs' proposed defenses. Allowing employers to avoid withdrawal liability based
7   on the failure of a union to comply with the requirements of the ARLA is unrelated to,
8   and arguably contrary to, the purpose of the MPPAA. Congress enacted the MPPAA to
9   protect multiemployer plan beneficiaries by providing contributing employers with an
10  incentive to remain in financially unstable plans rather than immediately withdrawing
11  from such plans. Milwaukee Brewery Workers' Pension Plan v. Joseph Schlitz Brewing
12  Co., 513 U.S. 414, 416-17 (1995). If anything, the defense Plaintiffs proffer would
13  drastically weaken the ability of the MPPAA to ensure the continued funding of
14  multiemployer plans. Recognition of a defense based on lack of ALRB certification or
15  other procedural shortcomings will not close an awkward gap in the statutory scheme.

16         Finally, allowing contributing employers to defend against withdrawal liability as
17  Plaintiffs seek to do is not essential, but, again, contrary to, promotion of fundamental
18  ERISA policies. ERISA was enacted to ensure that private-sector workers would receive
19  the pensions their employers promised them. See, e.g., Concrete Pipe & Prod., Inc.,
20  508 U.S. at 605-09. The same can be said regarding the fundamental policy of the
21  MPPAA which was to maintain the solvency of multiemployer plans despite the
22  withdrawal of some of the employers from their duty to contribute. Milwaukee Brewery
23  Workers' Pension Plan, 513 U.S. at 416-417.

24         Plaintiffs provide no federal authority in support of their defense to withdrawal
25  liability under the MPPAA. Congress has established an extensive statutory framework
26  and expressly announced its intention to occupy the field of private-sector pensions.
27  Plaintiffs have provided no persuasive arguments for creating additional rights under the
28  federal common law in these circumstances. Thus this Court holds that a contributing

1   employer to a multiemployer pension plan has no defense to withdrawal lability under

2   the MPPAA under federal common law based on technical or procedural deficiencies in

3   the formation or operation of the CLA Union or Pension Fund.

4          Defendants present an additional response to the claim that lack of certification is

5   a defense to withdrawal liability. Based on Mackillop v. Lowe's Mkt., 58 F.3d 1441, 1442

6   (9th Cir. 1995), Defendants contend that the Ninth Circuit has foreclosed certain

7   defenses to claims for unpaid contributions, and the same principal applies for

8   withdrawal liability. In Mackillop, a National Labor Relations Board administrative law

9   judge determined that the collective bargaining agreements were invalid because the

10  union did not represent an uncoerced majority of the employees. Id. at 1442. When the

11  employer stopped making contributions, the plans brought an action for unpaid

12  contributions against the employer. Id. at 1443. The employer argued that it had no

13  obligation to make contributions by virtue of the invalid collective bargaining

14  agreements. The Ninth Circuit, upon analyzing the statutory provision for unpaid

15  contributions to multiemployer plans (ERISA § 515, 29 U.S.C. § 1145), found that

16  "employers are responsible for ERISA plan contributions regardless of defenses

17  challenging the validity of the underlying CBA [collective bargaining agreement]." Id.

18  The Court reasoned that:

19          For reasons of public policy, traditional contract law does not apply with
            full force in actions brought under [ERISA] to collect delinquent trust fund
20          contributions. In recognition of the fact that millions of workers depend
            upon employee benefit trust funds for their retirement security, Congress
21          and the courts have acted to simplify trust fund collection actions by
            restricting the availability of contract defenses, which make collection
22          actions unnecessarily cumbersome and costly.

23  MacKillop, 58 F.3d at 1443 (citing Southwest Administrators, Inc. v. Rozay's Transfer,

24  791 F.2d 769 (9th Cir. 1986)). Based on a review of past holdings of various circuit

25  courts, including its own prior holdings, the Ninth Circuit held "that an employer's

26  assertion that the CBA is invalid due to lack of majority status is not a defense in an

27  action brought by an ERISA plan or its trustees to collect employer contributions" and

28

                                                33

"that Congress intended to abolish this very defense with the passage of section 515." MacKillop, 58 F.3d at 1444.

Defendants argue that since the type of claims made here by Plaintiffs are not defenses to claims for unpaid contributions, they are less likely defenses to claims of withdrawal liability. Both such claims were created to ensure that multiemployer funds would remain solvent and not collapse should employers cease contributing or withdraw from the plan.

Plaintiffs contend that MacKillop can be differentiated from the present case because it was limited to cases involving CBAs specifically found void because of the lack of majority status. The CBAs here are allegedly void for a different reason - the failure of the union to obtain certification pursuant to an ALRB election. Plaintiffs argue that voidness based on lack of union certification (as opposed to lack of majority status) has not been precluded as a defense by the MacKillop decision. Indeed, the MacKillop decision does not specifically address Plaintiff's defense based on lack of union certification under the ALRA. Further, the Ninth Circuit has identified at least one contractual defense that survives the enactment of section 515[13] - fraud in the execution of a bargaining agreement. MacKillop 58 F.3d at 1444 (citing Southwest Administrators, Inc. v. Rozay's Transfer, 791 F.2d 769 (9th Cir. 1986). However, other defenses, including fraud in the inducement, are not available to prevent the collection of unpaid contributions. Id. Plaintiffs urge the Court to determine that the labor agreements at issue here are void under California law and that a defense of fraud in the execution remains available to them.

Defendants present the stronger argument. In enacting ERISA, Congress sought to restrict the availability of most contractual defenses. However, some defenses do survive. The Supreme Court explained that section 515 did not serve to prohibit all defenses, rather just "unrelated" and "extraneous" defenses. See Kaiser Steel Corp. v.

---

[13] Section 515 authorizes actions for unpaid contributions under ERISA.

Mullins, 455 U.S. 72, 87-88 (1982). In Kaiser Steel, the Supreme Court refused to enforce a collective bargaining agreement provision that was illegal under federal labor and antitrust laws. Id. at 85-87. And, as previously described, the Ninth Circuit allowed fraud in the execution of a collective bargaining agreement to serve as a defense to unpaid contributions. In Operating Engineers Pension Trust v. Gilliam, 737 F.2d 1501, 1503 (9th Cir. 1984), an employer signed a collective bargaining agreement under the impression that he was only applying to become a member of the union as an owner-operator so that he could operate his own equipment on a union job site. The Ninth Circuit held that he was not liable for pension fund contributions owing under the agreement because he had reasonably relied on the union's representation that he was signing a document of a wholly different nature. Id. at 1504-05; see also Rozay's Transfer, 791 F.2d at 774 (the defense applies when the fraud "induces a party to believe the nature of his act is something entirely different than it actually is.")

Plaintiffs have not provided a persuasive rationale under contract law or statutory interpretation for allowing lack of union certification to excuse withdrawal liability. The policy behind limiting the availability of contractual defenses for unpaid contributions militates against Plaintiffs' efforts. Congress adopted § 515 for unpaid contribution actions because "simple collection actions brought by plan trustees ha[d] been converted into lengthy, costly and complex litigation concerning claims and defenses unrelated to the employer's promise and the plans' entitlement to the contributions, and steps [were required] to simplify delinquency collection." Kaiser Steel Corp., 455 U.S. at 87 (internal quotation marks omitted). Sponsors of the legislation intended the provision to "simplify contribution collection actions" by curtailing "'lengthy, costly, and complex litigation concerning claims and defenses unrelated to the employer's promise and the Plan's entitlement to the employer's contributions . . .  Sound national pension policy demands that employers . . . not be permitted to repudiate their pension promises.'" Board of Trustees v. California Coop. Creamery, 877 F.2d 1415, 1424 (9th Cir. 1989)

1  (quoting 126 Cong. Rec. S. 11673 (Aug. 26, 1980); 126 Cong. Rec. H. 7899 (Aug. 26,
2  1980)).

3      Congress added § 515 to ERISA to "free[] pension and welfare funds from
4  defenses that pertain to the unions' conduct." Orrand v. Scassa Asphalt, Inc., 794 F.3d
5  556, 563 (6th Cir. 2015). Thus, employers' written promises are enforceable if they are
6  not inconsistent with law. Id. at 562-563 (citing States, Se. & Sw. Areas Pension Fund v.
7  Gerber Truck Serv., Inc., 870 F.2d 1148, 1153 (7th Cir. 1989) (en banc). "If the
8  employer simply points to a defect in [contract] formation—such as fraud in the
9  inducement, oral promises to disregard the text, or the lack of majority support for the
10 union and the consequent ineffectiveness of the pact under labor law—it must still keep
11 its promise to the pension plans. . . . Anything less may well saddle the plans with
12 unfunded obligations." Id. (citing States, Se. & Sw. Areas Pension Fund, 870 F.2d at
13 1151).

14     Put another way, "multi-employer trust funds are entitled to rely on an employer's
15 promises to make contributions to the funds, irrespective of any breach or omission by
16 the union." Operating Eng'rs Local 324 Health Care Plan v. G&W Constr. Co., 783 F.3d
17 1045, 1053 (6th Cir. 2015). This is because the "funds often are not in a position to
18 know what is going on between the employer and the union, and the union may have
19 interests that differ from or are inimical to the funds' interests." Id. (citations omitted)

20     This policy to limit contractual defenses for unpaid contributions does not leave
21 employers who are legitimate victims of tortious conduct, such as fraud in the
22 inducement, without remedy. If an employer is fraudulently induced by a union to enter
23 a bargaining agreement with obligations to a trust fund, the employer may find remedy
24 in a separate legal action against the union itself. See Rozay's Transfer v. Local Freight
25 Drivers, Local 208, et al., 850 F.2d 1321, 1337 (9th Cir. 1988).

26     Given the policy behind section 515 of ERISA, the failure of the CLA Union to be
27 certified by the ALRB cannot be a defense to unpaid contributions.  The policy set forth
28 under the MPPAA provides even less rationale to allow the defense to apply to claims of

1    withdrawal liability. The Ninth Circuit has made clear that withdrawal liability is a

2    statutory obligation and not based on the underlying contractual obligation to provide

3    contributions. Moxley, 734 F.3d at 869. Section 515 has served to severely limit the

4    contractual defenses available to unpaid contribution claims.  Plaintiff has provided no

5    authority why a contractual defense would apply to a statutory based action regarding

6    withdrawal liability.

7         Plaintiffs' contention that lack of certification of the CLA Union is a defense to

8    withdrawal liability fails as a matter of law. Defendants are entitled to summary

9    judgment with respect to Plaintiffs' declaratory relief prayer for a finding that Plaintiffs

10   have no legal obligation to make withdrawal liability payments to defendants.

### b.    Related Actions Addressing Withdrawal Liability

12        Defendants have brought actions against other dairies asserting claims of

13   withdrawal liability under the MPPAA. In Dairy Employees Union Local No. 17, et al. v.

14   Henry Vender Poel and Son Dairy, et al. ("Vender Poel"), C.D. Cal. Case No. CV 12-

15   04550 FMO (OPx), the Court struck the defendant dairy's affirmative defenses based on

16   lack of union certification by the ALRB. (See Order, ECF No. 116 at 10-11.) The Court

17   in Vender Poel relied on the earlier decisions in Dairy Employees Union Local 17

18   Christian Labor Association of the Untied States of America Pension Trust v. Robert

19   Vander Eyk Dairy ("Vander Eyk"), C.D. Cal. Case No. CV 12-4545 DSF (SPx), ECF No.

20   51, which also concluded that lack of certification is not a defense.

21        The issues regarding certification is currently before the Ninth Circuit based on a

22   appeal of the Vander Eyk matter. See Ninth Cir. Case No. 13-57143. The matter has

23   been briefed and oral argument is set for February 2, 2016. See Docket No. 32.

24        Plaintiffs contend that since the area of law is unsettled, summary judgment is

25   improper. (Opp'n at 7.) However, Plaintiffs did not move to stay this matter pending the

26   Ninth Circuit's adjudication of the matter. See Dependable Highway Express, Inc. v.

27   Navigators Ins. Co., 498 F.3d 1059, 1066 (9th Cir. 2007) ("[A] district court possesses

28   the inherent power to control its docket and promote efficient use of judicial resources.")

1   It is just as well. As this court has reached the same conclusion as the other district

2   courts and found that lack of union certification is not a defense to withdrawal liability,

3   efficiency would dictate the expeditious resolution of this case so that if Plaintiffs seek

4   appellate review, the Ninth Circuit could consolidate its review of the issue.

5                               **c.   Arbitration Clause**

6          Plaintiffs' remaining claim for declaratory relief requests the Court find that

7   Plaintiffs are not bound to the arbitration provisions of the Trust Agreement. (TAC,

8   p.14.) Plaintiffs contend that the arbitration provision is unconscionable because it shifts

9   the cost of arbitration to the employers; it places place a greater burden for fees and

10  costs on Plaintiffs than on Defendants. (Id. at ¶ 38.) If Defendants win at arbitration, the

11  clause dictates that Plaintiffs must pay the entire cost of the arbitration including

12  Defendants' costs and fees. (Id.) If Plaintiffs win, they still must pay half the cost of the

13  arbitration. (Id.) Plaintiffs argue that they did not know of or agree to be bound by the

14  provisions of the arbitration agreement. (Id.) (Kirchner Decl., Ex. G at 80-81.)

15         The MPPAA provides that if an employer objects after notice and demand for

16  withdrawal liability, and the parties cannot resolve the dispute under 29 U.S.C. §

17  1399(b)(2), it will be referred to arbitration. Concrete Pipe & Prods., 508 U.S. at 611.

18  Congress provided two presumptions in favor of the plan sponsor to govern arbitration.

19  First, "any determination made by a plan sponsor under [29 U.S.C. §§ 1381-1399 and

20  1405 (1988 ed. and Supp. III)] is presumed correct unless the party contesting the

21  determination shows by a preponderance of the evidence that the determination was

22  unreasonable or clearly erroneous." Concrete Pipe & Prods., 508 U.S. at 611 (citing 29

23  U.S.C. § 1401(a)(3)(A)). Second, the sponsor's calculation of a plan's unfunded vested

24  benefits are presumed correct unless a party contesting the determination shows by a

25  preponderance of evidence that the actuarial assumptions were unreasonable, or that

26  there was a significant error in applying the assumptions. Id. (citing 29 U.S.C. § 1401(a)

27  (3)(B)).

28         Despite the presumptions in favor of the plan sponsor, the Supreme Court

1   determined that the arbitration process under the MPPAA did not violate the employer's
2   right to procedural due process. Concrete Pipe & Prods., 508 U.S. at 631. The Supreme
3   Court found it "entirely sensible to burden the party more likely to have information
4   relevant to the facts about its withdrawal from the Plan with the obligation to
5   demonstrate that facts treated by the Plan as amounting to a withdrawal did not occur
6   as alleged." Id.

7       Plaintiffs correctly note that the costs of arbitration are disproportionately
8   allocated to employers under the Trust Agreement. Plaintiffs couch their argument in
9   terms of unconscionability, a contractual defense. The Trust Agreement is not a
10  contract. Defendants adopted the Trust Agreement to govern the administration of the
11  pension plan. Plaintiffs maintain that they and other employers were not parties to the
12  agreement and did not consent to its terms.

13      It is possible that an unconscionability defense could apply to the arbitration cost
14  provision of the Trust Agreement. The section governing arbitration of withdrawal
15  liability disputes under the MPPAA states that they should be "conducted in the same
16  manner, subject to the same limitations… and enforced in United States courts as an
17  arbitration proceeding carried out under" the Federal Arbitration Act ("FAA") (9 U.S.C. §
18  1 et seq.). 29 U.S.C. § 1401(b)(3). The FAA preempts state law "to the extent that it
19  stands as an obstacle to the accomplishment and execution of the full purposes and
20  objectives of Congress." Sakkab v. Luxottica Retail N. Am., Inc., 803 F.3d 425 (9th Cir.
21  2015) (citing Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S.
22  468, 477 (1989)). However, it contains a saving clause that "permits agreements to
23  arbitrate to be invalidated by generally applicable contract defenses, such as fraud,
24  duress, or unconscionability." Id. (citing AT&T Mobility LLC v. Concepcion, 131 S. Ct.
25  1740, 1746 (2011)).

26      Rather than endeavor to resolve the highly fact specific inquiry as to whether the
27  arbitration provision is unconscionable, the Court finds the provision violates federal
28  regulations set forth by the Pension Benefit Guarantee Corporation ("PBCG") which

39

govern the allocation of costs and attorneys' fees in MPPAA arbitration claims. See 29 C.F.R. § 4221.14. ERISA's standards and the PBCG regulations grant an arbitrator broad discretion in determining the scope of the arbitration award, see 29 U.S.C. § 1401; 29 C.F.R. § 4221.14. The discretion is limited with respect to costs and fees associated with arbitration. The regulation provides:

> The costs of arbitration under this part shall be borne by the parties as follows:
>
> (a) Witnesses. Each party to the dispute shall bear the costs of its own witnesses.
>
> (b) Other costs of arbitration. Except as provided in § 4221.6(d) with respect to a transcript of the hearing, the parties shall bear the other costs of the arbitration proceedings equally unless the arbitrator determines otherwise. The parties may, however, agree to a different allocation of costs if their agreement is entered into after the employer has received notice of the plan's assessment of withdrawal liability.
>
> (c) Attorneys' fees. The arbitrator may require a party that initiates or contests arbitration in bad faith or engages in dilatory, harassing, or other improper conduct during the course of the arbitration to pay reasonable attorneys' fees of other parties.

29 C.F.R. § 4221.10. The terms of the Trust Agreement do not comply with applicable regulation. Should Defendants prevail, then Plaintiffs, in contravention of the regulation, would be liable for all of the costs of the arbitration, and would automatically be assessed Defendants' attorneys' fees. The regulation states that Plaintiffs should only be assessed half of the costs (unless the arbitrator determines otherwise), and that fees should only be granted upon a determination that a party engaged in bad faith or other improper conduct. 29 C.F.R. § 4221.10.  Under 29 C.F.R. § 4221.1(b), "any plan rules governing arbitration procedures… are effective only to the extent that they are consistent with this part and adopted by the arbitrator in a particular proceeding." The costs provisions of the Trust Agreement are not consistent with applicable regulations, and no evidence has been presented that they have been adopted by the arbitrator. The cost and fees provision of the Trust Agreement violate federal regulation. Plaintiffs may ultimately be assessed with Defendants' attorneys' fees relating to the arbitration. However, the determination of the arbitrator to award fees is to be governed by, and to

be made in compliance with, the provisions of section 4221.10.[14]

It appears, based on the pleadings and the parties' joint scheduling report, that there is no longer an active controversy regarding the arbitration clause, as Defendants have agreed to arbitration pursuant to the relevant regulations and "acknowledge[] that allocation of fees and costs will be up to the arbitrator." (Answer, ¶ 38, ECF No. 75; Joint Sched. Rept., ECF No. 76 at 3.) As Defendants have agreed to procced with the arbitration using the relevant regulations, rather than the terms of the Trust Agreement, there is not a controversy of sufficient immediacy and reality to warrant declaratory relief. Shell Gulf of Mex., 771 F.3d at 635; MedImmune, Inc., 549 U.S. at 127. By stating in their answer that they agreed that allocation of costs and fees will be made pursuant to regulation, Defendants have represented that the factual statement is true to the best of their knowledge. See Fed. Rule Civ. P. 11(b). Based on this representation, there appears to be no controversy, let alone an imminent controversy, with regard to the assessment of fees and costs at arbitration. No justiciable controversy exists with regard to the arbitration agreement, and the Court finds it appropriate to dismiss the claim *sua sponte*. Sturgeon, 768 F.3d at 1071.

### E.    Plaintiffs' State Law Claims

Plaintiffs second and third claims for relief in their TAC are for restitution and unfair business practices under Cal. Bus. & Prof. Code § 17200. (See TAC ¶¶ 42-45.) In both claims, Plaintiffs seek the same relief - the return or disgorgement of contributions they previously made to the Pension Fund for the benefit of their employees. (Id.) Defendants contend that they are entitled to summary judgment because the claims are preempted by ERISA.

There are two strands to ERISA's powerful preemptive force. First, ERISA

---

[14] Whether Plaintiffs may be liable for attorneys' fees associated with this litigation (as opposed to fees relating to the underlying arbitration matter) is governed by a different set of standards set forth in the MPPAA. See 29 U.S.C. §§ 1132(g)(2); 1451(b). "Under ERISA, the award of attorney fees to a pension plan is mandatory in all actions to collect delinquent contributions . . . , including actions to collect unpaid employer withdrawal liabilities." Trs. of Amalgamated Ins. Fund v. Geltman Indus., Inc., 784 F.2d 926, 932 (9th Cir. 1986).

section 514(a) expressly preempts all state laws "insofar as they may now or hereafter relate to any employee benefit plan[,]" 29 U.S.C. § 1144(a), but state "law[s] . . . which regulate insurance, banking, or securities" are saved from this preemption. 29 U.S.C. § 1144(b)(2)(A).

Second, ERISA section 502(a) contains a comprehensive scheme of civil remedies to enforce ERISA's provisions. See 29 U.S.C. § 1132(a). A state cause of action that would fall within the scope of this scheme of remedies is preempted as conflicting with the intended exclusivity of the ERISA remedial scheme, even if those causes of action would not necessarily be preempted by section 514(a). See Aetna Health Inc. v. Davila, 124 S. Ct. 2488, 2498, n.4 (2004); Cleghorn v. Blue Shield, 408 F.3d 1222, 1225 (9th Cir. 2005).

### 1.    Restitution

Defendants correctly assert that there is a statutory basis for the recovery of employer contributions under ERISA and that claims of restitution based on either state or federal common law are preempted. An employer may seek the return of contributions made to a multiemployer trust plan due to a mistake of law or fact under ERISA § 403(c)(2)(A). 29 U.S.C. § 1103(c)(2)(A). Section 403 gives an employer an implied right of action to recoup mistaken contributions. Award Serv., Inc. v. N. Cal. Retail Clerks Unions & Food Emp'r Joint Pension Fund, 763 F.2d 1066, 1068 (9th Cir. 1985); British Motor Car Distrib., Ltd. v. San Francisco Auto. Indus. Welfare Fund, 882 F.2d 371, 374 (9th Cir. 1989). An employer is entitled to a refund if it can establish that it made a mistaken contribution within the meaning of ERISA § 403(c)(2)(A)(ii). 29 U.S.C. § 1103(c)(2)(A)(ii). "The right to a refund is not automatic, however, even if the employer can demonstrate the requisite mistake of fact or law; the employer must also show that the equities favor restitution." Alaska Trowel Trades Pension Fund v. Lopshire, 103 F.3d 881, 885 (9th Cir. 1996).

In light of the statutory remedy created under § 403(c)(2)(A), Ninth Circuit "has not recognized any such federal common law action for restitution in favor of employers.

1  And there would appear to be no basis for such an action particularly where this court

2  does allow employers to bring suit under ERISA for restitution of mistaken

3  contributions." British Motor Car Distributors, 882 F.2d at 377. See also Great-W. Life &

4  Annuity Ins. Co. v. Knudson, 534 U.S. 204, 209 (2002) ("ERISA's carefully crafted and

5  detailed enforcement scheme provides strong evidence that Congress did not intend to

6  authorize other remedies that it simply forgot to incorporate expressly.") (internal

7  quotation omitted).

8      Plaintiffs' restitution claim is preempted by ERISA. Even if the Ninth Circuit was

9  to recognize a federal common law cause of action for restitution of mistaken

10  contributions to an ERISA plan, the Employers would still be required to allege a section

11  403(c)(2)(A)(ii) mistake of fact. British Motor Car Distributors, Ltd., 882 F.2d at 377.

12      Plaintiffs have not asserted that the restitution claim is based on ERISA §

13  403(c)(2)(A) rather than state law. Plaintiffs have amended their complaint three times,

14  and have never referenced § 403(c)(2)(A). Nor have Plaintiffs plead the elements

15  required to state a claim under § 403(c)(2)(A) – including that the contributions were

16  made based on a mistake of fact and that equities favor restitution.  Mistakes of fact

17  have been narrowly construed by the courts and are mostly limited to clerical error

18  relating to the calculation of the amount of contributions. See Anderson v. Strauss

19  Neibauer & Anderson APC Profit Sharing Plan, 2010 U.S. Dist. LEXIS 131374 (E.D.

20  Cal. Dec. 6, 2010) (J. Wanger, presiding) ("[M]istake of fact is fairly limited. In general, a

21  misplaced decimal point, an incorrectly written check, or an error in making a

22  calculation, are examples of situations that could be construed as constituting a mistake

23  of fact. What an employer presumed or assumed is not a mistake of fact.) (citing I.R.S.

24  P.L.R. 9144041 (Aug. 9, 1991)). The legislative history of § 403(c)(2)(A)(ii) states: "An

25  employer's contributions can be returned . . . if made as a mistake of fact. (For example,

26  an employer may have made an arithmetical error in calculating the amounts that were

27  to be contributed to the plan.)" British Motor Car Distributors, Ltd., 882 F.2d at 376-377.

28      Plaintiffs' restitution claim, in its entirety, alleges that "Defendants, having

1    received money that they were not entitled to are obligated to make restitution to the

2    intended beneficiaries and return the money that was submitted to Defendants for

3    Plaintiffs' employees to Plaintiffs' employees." (TAC at ¶ 43.) Plaintiffs seek to have

4    contributions made to Defendants be disgorged and provided directly to the employees.

5    Section 403(c)(2)(A) does not provide for such relief. It provides that employers are

6    entitled to limited recovery of contributions that were not required to be made, but were

7    made due to a miscalculation or clerical error. Plaintiffs do not allege that they are

8    entitled to recovery of the mistaken contributions, or that the contributions were made

9    as a mistake of fact. Even if Plaintiffs had alleged a claim of restitution under §

10   403(c)(2)(A), they have not alleged facts that would entitle them to recovery.

11      Plaintiffs do incorporate numerous allegations in its TAC regarding the lack of

12   certification of the CLA Union and mismanagement of the Pension Fund. If construed

13   liberally, it is possible to consider those allegations as a basis of mistake of fact leading

14   to contributions that should be refunded. Even assuming that Plaintiffs intended to bring

15   the restitution action under section 403(c)(2)(A) and alleged that the various acts of

16   mismanagement were the basis for mistakes of fact, the claim would fail. In general,

17   claims regarding how to manage plan assets cannot, as a matter of law, be a basis for

18   mistake of fact.  For example, claims of "alleged actuarial error on the part of plan

19   fiduciaries does not fall within the section 403(c)(2)(A)(ii) mistake of fact exception."

20   British Motor Car Distributors, Ltd., 882 F.2d at 375-376. Unlike clerical or arithmetical

21   mistakes, actions of Defendants that "go to the decision-making process required of

22   plan fiduciaries in carrying out their duties under ERISA and the Trust Agreement and

23   the Trustees' decisions made in carrying out these duties are subject only to the highly

24   deferential arbitrary and capricious test applicable when fiduciary decisions are

25   challenged under ERISA." Id. (citations omitted).

26      Plaintiffs claim for restitution, as based on state law, is barred by conflict

27   preemption under section 502(a). See 29 U.S.C. § 1132(a). If the claim for restitution is

28   based on federal law under section 403(c)(2)(A), it fails to state facts upon which relief

1   could be granted. There is no genuine issue of material fact but that Plaintiffs' claim for

2   relief must fail. Defendants' motion for summary judgment is granted as to claim two of

3   the TAC.

### 2.   Unfair Competition Law

5   Plaintiffs' third and final cause of action is for unfair business practices under Cal.

6   Bus. & Prof. Code § 17200, the California Unfair Competition Law ("UCL"). "To bring a

7   UCL claim, a plaintiff must show either an (1) unlawful, unfair, or fraudulent business act

8   or practice, or (2) unfair, deceptive, untrue or misleading advertising." Lippitt v.

9   Raymond James Fin. Servs., Inc., 340 F.3d 1033, 1043 (9th Cir. 2003) (internal

10  quotations omitted). Because the California UCL statute is phrased in the disjunctive, a

11  practice may be unfair or deceptive even if is not unlawful, or vice versa. Lippitt, 340

12  F.3d at 1043. Plaintiffs allege that the acts of Defendants constitute an unfair business

13  practice.

14  An act is "unfair" under the UCL if it "significantly threatens or harms competition,

15  even if it is not specifically proscribed by another law" or "is tethered to some

16  legislatively declared policy . . . ." Cel—Tech Commc'ns, Inc. v. Los Angeles Cellular

17  Tel. Co., 20 Cal. 4th 163, 180, 186-87 (1999); Swanson v. EMC Mortg. Corp., No. 09-

18  1507, 2009 U.S. Dist. LEXIS 122216, 2009 WL 4884245, at *9 (E.D. Cal. Dec. 9, 2009).

19  "[T]he 'unfairness' prong has been used to enjoin deceptive or sharp practices . . . ."

20  Countrywide Fin. Corp. v. Bundy, 187 Cal. App. 4th 234, 257, 113 Cal. Rptr. 3d 705

21  (2010) (internal citation and quotation marks omitted).

22  Plaintiffs' UCL claim attempts to create a remedy as previously described in

23  Plaintiffs' restitution claim. This claim is barred as preempted under both express

24  preemption under section 514(a) and conflict preemption under section 502(a). See

25  e.g., Sarkisyan v. CIGNA Healthcare of Cal., Inc., 613 F. Supp. 2d 1199 (C.D. Cal.

26  2009). Plaintiffs have not shown that the exceptions to either section apply.

27  Section 514(a) broadly preempts "any and all State laws insofar as they may now

28  or hereafter relate to any [covered] employee benefit plan" unless the state law falls

1   within the savings clause of § 514(b). 29 U.S.C. § 1144. The savings clause in § 514(b)

2   spares "any law of any State which regulates insurance, banking, or securities." Id. §

3   1144(b)(2)(A). "To fall under the savings clause, a regulation must satisfy a two-part test

4   laid out in Kentucky Ass'n of Health Plans, Inc. v. Miller, 538 U.S. 329, 342, 123 S. Ct.

5   1471, 155 L. Ed. 2d 468 (2003)." Standard Ins. Co. v. Morrison, 584 F.3d 837, 842 (9th

6   Cir. 2009). "First, the state law must be specifically directed toward entities engaged in

7   insurance." Id. Second, "it must substantially affect the risk pooling arrangement

8   between the insurer and the insured." Id. (internal citations omitted).

9        The California UCL is not specifically directed towards entities engaged in

10   insurance nor does it substantially affect the risk pooling arrangement. The UCL is a

11   general statue enacted to protect against a wide variety of unlawful, unfair or fraudulent

12   business acts or practices, and not directed to any specific industry, such as insurance.

13        Further, the UCL claim is barred based on conflict preemption under section

14   502(a) for the same reasons as the restitution claim is barred. The statutory remedy for

15   restitution of contributions under section 403(c)(2)(A) precludes any state cause of

16   action providing for similar relief. Because the claim is preempted under section 502(a),

17   there is no genuine issue of material fact but that Plaintiffs' claim for relief must fail.

18   Defendants' motion for summary judgment is granted as to claim three of the TAC.

19        **F.    Defendants' Counterclaim – Order Compelling Arbitration**

20        Defendants seek summary judgment in its favor on its sole counterclaim, i.e., the

21   claim that all disputes between an employer and a multiemployer plan over the

22   assessment of withdrawal liability must be submitted to arbitration. (See Answer at ¶¶

23   46-51, ECF No. 75.) Defendants seek an order directing the withdrawal liability issue

24   be submitted to arbitration. Id.

25        Plaintiffs do not dispute the duty to arbitrate disputes over withdrawal liability, but

26   contend, as previously asserted, that issues of material fact exist with regard to whether

27   Plaintiffs are "employers" and the Pension Fund qualifies as a "multiemployer plan"

28   under the MPPAA. Plaintiffs further contend that if Defendants seek to compel

1    arbitration, they should have done so years ago, and the request may not properly be

2    made in a motion for summary judgment.

3        ERISA requires that all disputes over withdrawal liability be resolved by

4    arbitration. 29 U.S.C. § 1401(a)(1); Carpenters Pension Trust Fund v. Moxley, 734 F.3d

5    864, 867-868 (9th Cir. 2013) (citing Teamsters Pension Trust Fund-Bd. of Trustees of

6    W. Conference v. Allyn Transp. Co., 832 F.2d 502, 504 (9th Cir. 1987)). MPPAA states

7    unambiguously that "any dispute between an employer and the plan sponsor . . .

8    concerning a determination made under sections 1381 through 1399 . . . shall be

9    resolved through arbitration" (29 U.S.C. § 1401(a)(1)), and Congress clearly intended

10   exactly what those words import. Allyn Transp. Co., 832 F.2d at 505-506.

11       The Ninth Circuit has held that ERISA's arbitration clause is not a jurisdictional

12   prerequisite to federal court review. Board of Trustees of the Constr. Laborers' Pension

13   Trust v. M.M. Sundt Constr. Co., 37 F.3d 1419, 1420-1421 (9th Cir. 1994). Rather, the

14   arbitration clause serves as an exhaustion of administrative remedies requirement. Id.

15   (citing Flying Tiger Line v. Teamsters Pension Trust Fund of Philadelphia, 830 F.2d

16   1241, 1252 (3rd Cir. 1987)). Exceptions to the exhaustion requirement are limited, and

17   apply only in extraordinary circumstances, such as when the arbitral process would be

18   futile or would cause irreparable injury. Id.

19       Questions of statutory interpretation are not excepted from arbitration under the

20   MPPAA. Allyn Transp. Co., 832 F.2d at 504. Arbitration is the initial stage of the dispute

21   resolution process established by statute, with judicial consideration to follow, "to

22   enforce, vacate or modify the arbitrator's award." Id. "Congress was dissatisfied with

23   collection procedures that resulted in lengthy, costly and complex litigation, and

24   provisions for informal, expeditious resolution of withdrawal liability disputes were at the

25   heart of the MPPAA and the value of arbitration in fulfilling Congress' intent to provide

26   an efficient, expeditious dispute resolution mechanism lies in initial resort to that

27   mechanism." Id. (citing I.A.M. Nat'l Pension Fund v. Clinton Engines Corp., 825 F.2d

28   415, 427 (D.C. Cir. 1987)).

1    Issues concerning whether an employer has withdrawn from a plan and, if so,

2    the amount of withdrawal liability are committed to arbitration. However, jurisdictional

3    issues, such as whether the MPPAA applies, are subject to judicial review. The Ninth

4    Circuit has not directly addressed the issue, but several other circuit courts have held

5    that whether a defendant is an employer under the MPPAA is subject to judicial review,

6    not arbitration. See N.Y. State Teamsters Conference Pension & Ret. Fund v. Express

7    Servs. Inc., 426 F.3d 640, 645 (2d Cir. 2005); Galgay v. Beaverbrook Coal Co., 105

8    F.3d 137, 142 (3d Cir. 1997); Teamsters Joint Council No. 83 v. Centra, Inc., 947 F.2d

9    115, 122 (4th Cir. 1991); Rheem Mfg. Co. v. Central States Southeast and Southwest

10   Areas Pension Fund, 63 F.3d 703, 706 (8th Cir. 1995); Carriers Container Council, Inc.

11   v. Mobile S.S. Ass'n Inc.-Intern. Longshoreman's Ass'n, AFL-CIO Pension Plan and

12   Trust, 896 F.2d 1330, 1345 (11th Cir. 1990). (There is an exception: disputes as to

13   whether an entity has ceased to be an employer, rather than whether the entity was

14   ever an employer, are subject to arbitration. See Galgay, 105 F.3d at 141; Centra, 947

15   F.2d at 122. This exception does not apply because Plaintiffs contend that they never

16   were employers under the MPPAA.)

17   Given the clear intention of Congress, Plaintiffs' challenges as to whether they

18   are employers and whether the MPPAA is applicable to the present dispute are

19   appropriate for judicial review. However, to the extent that Plaintiffs allege that

20   Defendants' actions serve as defenses to withdrawal liability, those claims must be

21   presented first in arbitration.

22   The Court has found that Plaintiffs are employers and that the Pension Fund is a

23   multiemployer plan under the MPPAA. Plaintiffs remaining disputes must be resolved by

24   arbitration prior to seeking judicial review. 29 U.S.C. § 1401(a)(1); Moxley, 734 F.3d at

25   867-868.

26   Plaintiffs believe that arbitration is not proper and that Defendants should have

27   attempted to compel arbitration long before now. This argument is without merit. While

28   either an employer or a plan sponsor can seek arbitration after the sponsor notifies an

1  employer of withdrawal liability, the proceeding is provided for the benefit of the

2  employer, not the pension fund. If an employer fails to initiate arbitration, the employer

3  waives the opportunity to assert any defenses that could have been raised before the

4  arbitrator. Allyn Transp. Co., 832 F.2d at 504; see also Operating Engineers' Pension

5  Trust Fund v. Clark's Welding and Machine, 688 F.Supp.2d 902, 914-915 (N.D. Cal.

6  2010). "If no arbitration proceeding has been initiated [pursuant to section 1401(a)], the

7  amounts demanded by the plan sponsor under section 1399(b)(1) of this title shall be

8  due and owing on the schedule set forth by the plan sponsor." Id. (quoting 29 U.S.C. §

9  1401(b)(1)). Regardless, Plaintiffs have already sought arbitration, and its proceedings

10  have been stayed pending this action.

11      The Court has determined that there are no genuine issues regarding whether

12  Plaintiffs are employers or whether the Pension Fund is a multi-employer plan under the

13  MPPAA. As the Court has found the jurisdictional requirements met, the remaining

14  disputes over withdrawal liability are to be addressed in the first instance through

15  arbitration. The Court grants summary judgment on Defendants' counterclaim and

16  orders the parties to submit their remaining disputes to arbitration as required under 29

17  U.S.C. § 1401.

18  **VI.   MOTION FOR PROTECTIVE ORDER**

19      Defendants also seek a protective order under Federal Rule of Civil Procedure

20  26(c) to prevent further discovery by Plaintiffs. (Mot. for Prot. Order ["Rule 26(c) Mot."],

21  ECF No. 87.) Defendants contend that Plaintiffs attempt to discover information

22  regarding the Pension Fund's compliance with the Taft-Hartley Act is not relevant to

23  whether the Fund qualifies as a multiemployer plan and therefore irrelevant and unduly

24  burdensome. (Id. at 2.) Defendants assert that the arguments set forth in the motion for

25  summary judgment show that the matter can be resolved in Defendants' favor without

26  the need for additional evidence. (Id.) Plaintiffs dispute the contentions, claiming that the

27  discovery is relevant, reasonably calculated to lead to admissible evidence, and that

28  Plaintiffs are entitled to monetary sanctions from Defendants for having to respond to

1  the motion for a protective order. (Opp'n to Mot. for Prot. Order [Rule 26(c) Opp'n"],

2  ECF No. 92.)

3    **A.    Legal Standard**

4      Pursuant to Federal Rule of Civil Procedure 26(c)(1), "[t]he court may, for good

5  cause, issue an order to protect a party or person from annoyance, embarrassment,

6  oppression, or undue burden or expense." The party seeking the protective order has

7  the burden "to 'show good cause' by demonstrating harm or prejudice that will result

8  from the discovery." <u>Rivera v. NIBCO, Inc.</u>, 364 F.3d 1057, 1063 (9th Cir. 2004)

9  (granting plaintiff a protective order from discovery requested by defendant, which

10  inquired into plaintiff's immigration status). Generalized statements of harm are not good

11  enough. Rather, "[t]he party opposing disclosure has the burden of proving 'good

12  cause,' which requires a showing 'that specific prejudice or harm will result' if the

13  protective order is not granted." <u>Father M v. Various Tort Claimants (In re Roman</u>

14  <u>Catholic Archbishop of Portland in Oregon)</u>, 661 F.3d 417, 424 (9th Cir. 2011) (quoting

15  <u>Foltz v. State Farm Mut. Auto. Ins. Co.</u>, 331 F.3d 1122, 1130 (9th Cir. 2003)), cert.

16  denied, 132 S. Ct. 1867, 182 L. Ed. 2d 645 (2012). "'If a court finds particularized harm

17  will result from disclosure of information to the public, then it balances the public and

18  private interests to decide whether a protective order is necessary.'" <u>Rivera</u>, 364 F.3d at

19  1063-64 (quoting <u>Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.</u>, 307 F.3d 1206,

20  1211 (9th Cir. 2002)). In addition to "limiting the scope of discovery, or fixing the terms

21  of disclosure," the protective order may "prohibit[] the requested discovery altogether."

22  <u>Id.</u> at 1063.

23    **B.    Relevant Facts**

24      The relevant facts leading to the filing of the protective order by Defendants are

25  not in material dispute. In 2014, Defendants produced for deposition a union-side

26  trustee and an employer-side trustee. Defendants objected to, and prevented the

27  deponents from answering, Plaintiffs' questions about the operation of the Pension

28  Fund. On July 17, 2014, Defendants filed a motion for protective order to prevent

50

1    discovery into management of the Pension Fund and further depositions of all union-

2    side and employee-side trustees. (ECF No. 37.) The matter was taken under

3    submission by the Court in light of its order granting Defendants' second motion to

4    dismiss, the filing of Plaintiffs' Second Amended Complaint, and the filing of Defendants'

5    Third Motion to Dismiss. Eventually the Court ordered the motion for protective order

6    withdrawn without prejudice to renewing it. (ECF No. 74.) On June 18, 2015, the Court

7    held an informal telephonic discovery dispute conference and authorized Defendants to

8    file a renewed motion for a protective order. (ECF No. 84.) On July 12, 2014,

9    Defendants filed the instant motion. (ECF No. 87.)

10    Plaintiffs admit in their opposition that they seek to take the depositions of the

11    remaining union and employee-side trustees on the board of directors of the Pension

12    Fund to inquire into the alleged "extraordinary misconduct" that is "unprecedented in

13    labor management relations" conducted by the CLA Union and the Pension Fund.

14    (Opp'n at 3-5.) The issues involve the management of the Pension Fund, including

15    whether the CLA Union and Pension Fund shared offices, resources, and employees

16    and whether the Pension Fund improperly comingled assets with the CLA union. (Opp'n

17    at 3-4.)

18    **C.    Analysis**

19    The Court has determined that the motion for summary judgment is capable of

20    resolution without further discovery. Plaintiffs assert that the evidence is relevant to

21    whether the Pension Fund is a valid fund under ERISA and thus whether it has standing

22    to bring withdrawal liability claims. As discussed above, the Court has found that the

23    information sought by Plaintiffs is not relevant to issues of standing. The Court has

24    determined that the Pension Fund is a plan under ERISA and a multiemployer plan

25    under the MPPAA. The Court determined that the plan meets the Donovan criteria for

26    qualifying as a Plan under ERISA. Plaintiffs contend that the evidence of the alleged

27    misconduct which Defendants seek to withhold shows that the Pension Fund is not a

28    Plan. However, Plaintiffs provide no legal authority or persuasive reasoning why the

1    conduct is relevant to the analysis set forth by the statutory definition under ERISA or

2    the elements set forth by <u>Donovan</u>. Plaintiffs also contend that the evidence at issue is

3    relevant to whether the Pension Fund is a multiemployer plan under the MPPAA. But

4    the Court has determined that the alleged misconduct of Defendants is not relevant to

5    whether the plan meets the requirements set forth under the MPPAA (29 U.S.C. §§

6    1001(37) & 1301(a)(3)). Plaintiffs present no arguments otherwise.

7         The Court has also determined that Plaintiffs are Employers under the MPPAA.

8    Plaintiffs again contend that the evidence subject to this protective order is relevant to

9    showing that the Pension Fund is not a valid plan and there was no obligation to

10   contribute. Plaintiffs do not challenge that they employed members of the CLA Union

11   and provided contributions to the Pension Fund. To the extent that Plaintiffs contend

12   that the evidence is relevant to whether they had a duty to contribute, the issue is

13   committed to arbitration.

14        The Court has also determined that that the defenses alleged by Plaintiffs based

15   on defects or other actions of the Pension Plan were not applicable to withdrawal

16   liability.

17        Additional discovery into the proposed issues raised by Plaintiffs would not affect

18   the determination of the Court that summary judgment is proper. Plaintiffs contend that

19   the evidence is relevant, but in so doing do not refer to applicable legal standards and

20   show how the evidence might relate to those standards. Instead, Plaintiffs simply repeat

21   the same contentions.  They do not even properly address Defendants' arguments. The

22   evidence is not relevant. Further discovery into it would be burdensome. Defendants'

23   motion for protective order is granted.

24        Finally, in their opposition to the motion for protective order, Plaintiffs request

25   sanctions against Defendants. Having ruled in favor of Defendants, Plaintiffs' request for

26   sanctions is denied.

27   **VII.   <u>CONCLUSION AND ORDER</u>**

28        The Court finds that there is no genuine issue of material fact on the issue of

1  whether Plaintiffs are entitled to relief from the claims contained in the TAC; they are not

2  so entitled.

3        There is no genuine issue of material fact as to whether Plaintiffs have standing

4  to seek a declaration that their contributions to the Pension Fund be remitted to the

5  employees; there is no legal basis for the claim nor has any adverse action been taken

6  against Plaintiffs regarding past pension contributions to create a dispute capable of

7  resolution by declaratory relief.

8        No genuine issue of material fact exists regarding whether there is a justiciable

9  controversy regarding enforcement of the cost and fee provisions of the arbitration

10  agreement. Defendants have agreed not to enforce those arbitration terms of the Trust

11  Agreement, so no justiciable controversy remains for resolution in the form of

12  declaratory relief.

13        Plaintiffs do have standing to assert a declaratory relief claim on whether lack of

14  union certification serves as a defense to withdrawal liability. However, the Court has

15  found that the lack of union certification is not an enumerated statutory defense under

16  the MPPAA; that such a defense is preempted if presented under state law; and that

17  such a defense should not be extended under federal common law.

18        The Court has determined that Plaintiffs' claims are not entitled to relief on their

19  restitution and unfair business practices claims; such claims are preempted and there

20  are no facts presented that would entitle Plaintiff to relief.

21        Defendants' counterclaim for an order compelling the matter to arbitration is

22  granted. No genuine issue of material fact exists on the issue of whether assessment of

23  withdrawal liability should be committed to arbitration.

24        The Court also grants Defendants' motion for a protective order. The discovery

25  requested by Plaintiffs is not relevant to the Court's determination of the motion for

26  summary judgment. As Plaintiffs are not the prevailing party on the motion for protective

27  order, their request for attorney fees incurred in connection with it is denied.

28        For the reasons discussed above, the Court:

1.  GRANTS Defendants Dairy Employees Union Local No. 17 Christian Labor Association of the United States of America Pension Trust and the Board of Trustees of the Dairy Employees Union Local No. 17 Christian Labor Association of the United States of America Pension Trust's motion for summary judgment as to Plaintiffs Irigaray Dairy, Charles Van Der Kooi Dairy, Henry Jongsma & Son Dairy, and Cow-West North Star Dairy's third amended complaint (ECF No. 88);

2.  GRANTS Defendants' motion for summary judgment in favor of Defendants' counterclaim and orders the parties to proceed with arbitration regarding withdrawal liability;

3.  GRANTS Defendants' motion for a protective order (ECF No. 87); and

4.  ORDERS the Clerk of Court to enter judgment in favor of Defendants and against Plaintiffs and close the case.

IT IS SO ORDERED.

Dated:   December 23, 2015        /s/ *Michael J. Seng*
                                  UNITED STATES MAGISTRATE JUDGE