1

2

3

4

5

6

7

8              UNITED STATES DISTRICT COURT

9              EASTERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| IRIGARAY DAIRY, CHARLES VAN DER KOOI DAIRY, HENRY JONGSMA & SON DAIRY , and COW-WEST NORTH STAR DAIRY, | Case No.  1:13-cv-01112-MJS **ORDER REGARDING DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS** **(ECF Nos. 111-12)** |
| Plaintiffs, | |
| v. | |
| DAIRY EMPLOYEES UNION LOCAL NO. 17 CHRISTIAN LABOR ASSOCIATION OF THE UNIDED STATE OF AMERICA PENSION TRUST, and BOARD OF TRUSTEES OF THE DAIRY EMPLOYEES UNION LOCAL NO. 17 CHRISTIAN LABOR ASSOCIATION OF THE UNITED STATES OF AMERICA PENSION TRUST, | |
| Defendants. | |

22  **I.     INTRODUCTION**

23

24         Plaintiffs Irigaray Dairy ("Irigaray"), Charles Van Der Kooi Dairy ("Van Der Kooi"),

25  Henry Jongsma & Son Dairy ("Jongsma"), and Cow-West North Star Dairy ("Cow-

26  West") (collectively "Plaintiffs") are four family-owned cattle dairies. Plaintiffs brought a

27  declaratory relief action requesting the Court determine whether Defendants Dairy

28  Employees Union Local No. 17 Christian Labor Association of the United States of

1   America Pension Trust (the "Fund") and the Board of Trustees of the Dairy Employees

2   Union Local No. 17 Christian Labor Association of the United States of America Pension

3   Trust (the "Board") (collectively the "Pension Fund") should be entitled to assess

4   withdrawal liability against Plaintiffs.

5        Plaintiffs sought a judgment declaring that Plaintiffs are not liable under the

6   Employees Retirement Income Security Act ("ERISA") for withdrawal liability under 29

7   U.S.C. § 1381 and for restitution of allegedly mismanaged amounts Plaintiffs previously

8   paid Defendants for the benefit of employees. (Third Amended Complaint ["TAC"], ECF

9   No. 70 at 14.)

10        After three motions to dismiss and the filing of amended complaints, Defendants

11   moved for summary judgment on July 17, 2015. (ECF No. 88.) On December 23, 2015,

12   the Court granted Defendants Trust Funds' Motion for Summary Judgment, denying

13   Plaintiffs' claims for declaratory relief and state claims of restitution and unfair business

14   practices, and granting Defendants' counterclaim to compel arbitration on withdrawal

15   liability.  (Order, ECF No. 108.) The order on the motion adjudicated all outstanding

16   disputed claims, and the matter was closed the same day. (ECF No. 109.)

17        On January 6, 2016, Defendants filed the present motion for attorneys' fees.

18   (ECF Nos. 111-12.) In the motion, Defendants seek  $110,730.92 in attorneys' fees and

19   $970.76 in costs. Plaintiffs filed a response on February 12, 2016, and Defendants filed

20   a reply on February 19, 2016. (ECF Nos. 116-17.) On February 24, 2016, the Court

21   vacated the hearing and deemed the matter submitted on the record under Local Rule

22   230(g). (ECF No. 120.)

23   **II.**    **THE PARTIES' CONTENTIONS**

24       **A.**    **Defendants' Contentions**

25        Defendants contend that they are entitled to fees and costs based on a provision

26   of the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA") which provides

27   for mandatory awards of fees and costs in actions for delinquent contributions and

28   withdrawal liability. See 29 U.S.C. 1132(g)(2). If, for some reason, section 1132(g)(2) is

1  inapplicable, Defendants assert that they are alternatively entitled to attorneys' fees

2  under the more general discretionary attorneys' fee section of the MPPAA.  See 29

3  U.S.C. 1451(e). Under that section, Courts must look to the factors set forth in Hummell

4  v. S. E. Rykoff & Co., 634 F.2d 446, 453 (9th Cir. 1980). Those factors include: "(1) the

5  degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing

6  parties to satisfy an award of fees; (3) whether an award of fees against the opposing

7  parties would deter others from acting under similar circumstances; (4) whether the

8  parties requesting fees sought to benefit all participants and beneficiaries of an ERISA

9  plan or to resolve a significant legal question regarding ERISA; and (5) the relative

10  merits of the parties' positions." Defendants contend that each Hummell factor weighs

11  in their favor.

12      **B.      Plaintiffs' Contentions**

13      Plaintiffs oppose the motion. They contend that Defendants are not entitled to

14  attorneys' fees because Plaintiffs are not delinquent in making interim payments and

15  that Defendants have not prevailed in the action for delinquent contributions and

16  withdrawal liability. Specifically, Plaintiffs assert that while this Court adjudicated most of

17  the legal disputes before it in favor of Defendants, including compelling the parties to

18  arbitration with regard to the withdrawal liability claims, Defendants have not prevailed

19  on the withdrawal liability claims as those claims have been left to final adjudication by

20  the arbitrator. Plaintiffs also contend that the action before the Court was for declaratory

21  relief, and not an action by Defendants to collect withdrawal liability, and therefore is not

22  governed by the statutory attorneys' fees provisions set forth by Defendants.

23      With regard to discretionary attorneys' fees, Plaintiffs argue that all of the

24  Hummell factors weigh in their favor. Of specific note with regard to the arguments

25  presented, Plaintiffs contend that the fifth Hummell factor – the relative merits of the

26  parties' position – weighs in their favor because at least one dairy in a related action

27  successfully defended against withdrawal liability by asserting a latches defense.

28  Plaintiffs assert that the latches defense may apply to several of the dairies in the

3

1  present matter, precluding a finding of withdrawal liability at arbitration.

2  **III.   ANALYSIS**

3      The statutory provisions of ERISA and MPPAA provide clear authority for

4  mandatory and discretionary attorney fees. The critical issue with regard to this motion

5  is whether the current action, which originated as a declaratory relief action by Plaintiffs,

6  should be considered an action for enforcement of withdrawal liability by Defendants,

7  entitling them to statutory attorneys' fees.

8      **A.     Is A Declaratory Relief Action Eligible for Attorneys' Fees?**

9      The ordinary rule with respect to attorneys' fees in federal courts is that each

10 party bears its own fees and costs. See Alyeska Pipeline Service Co. v. Wilderness

11 Soc'y, 421 U.S. 240, 247, 95 S. Ct. 1612, 44 L. Ed. 2d 141 (1975). This basic principle,

12 however, does not apply when some statutory or nonstatutory provision explicitly

13 authorizes the court to award attorneys' fees to the prevailing party. Id. at 260-63. For

14 example, had Defendants initiated a successful suit for withdrawal liability against

15 Plaintiffs, it is clear that they would be entitled to statutory attorneys' fees should they

16 meet the requirements set forth under 29 U.S.C. § 1132(g)(2) or § 1451(e).

17     The underlying dispute from which this action arose occurred when Defendants

18 initiated actions against the Plaintiff Dairies for withdrawal liability. Plaintiffs disputed

19 that Defendants were entitled to withdrawal liability, and timely elected to arbitrate the

20 dispute. In addition, Plaintiffs asserted that based on the lack of proper certification

21 under California law, Defendants did not have jurisdiction to assert withdrawal liability.

22 They brought the current declaratory relief action in this Court to adjudicate the

23 jurisdictional issues relating to withdrawal liability.

24     Unfortunately, relevant case law does not specifically state that attorneys' fees in

25 declaratory relief actions should be based on the underlying federal action. However, it

26 seems appropriate based on several rationales.

27     First, courts have specifically authorized attorneys' fees for declaratory relief

28 actions based on diversity jurisdiction where the state laws provide for attorneys' fees.

4

1    "[T]he Federal Declaratory Judgment Act … authorizes an award of attorney's fees

2    where controlling state substantive law permits such recovery." See Ag Acceptance

3    Corp. v. Veigel, 564 F.3d 695, 701 (5th Cir. 2009); O.N. Equity Sales Co. v. Estate of

4    Pence, 2011 U.S. Dist. LEXIS 62542, 2-3 (D. Or. May 4, 2011). The Court can think of

5    no reason to draw a distinction here based on whether state and federal substantive law

6    applies. Should the governing law, whether state or federal, provide for attorneys' fees,

7    the fact one party initiates an action for declaratory relief prior to an affirmative action

8    being filed should not preclude an award of attorneys' fees.

9            Further, in declaratory relief actions based on federal question jurisdiction, like

10   this one, courts have looked to the nature of the underlying dispute to determine other

11   issues, including subject matter jurisdiction. Medtronic, Inc. v. Mirowski Family

12   Ventures, LLC, 134 S. Ct. 843, 848, 187 L. Ed. 2d 703 (2014). ("The relevant question

13   concerns the nature of the threatened action in the absence of the declaratory judgment

14   suit.") In this case, the nature of the threatened action was for withdrawal liability.

15           Finally, the Supreme Court has recently allowed attorneys' fees based on federal

16   statutory fee shifting statutes in a declaratory relief action based on federal question

17   jurisdiction. See Highmark Inc. v. Allcare Health Mgmt. Sys., 134 S. Ct. 1744 (2014). In

18   Highmark, Plaintiff filed a declaratory relief action alleging that Defendant's patent was

19   invalid and unenforceable. Id. at 1747. Plaintiff was granted summary judgment on its

20   claims, and moved the district court for attorneys' fees under 35 U.S.C. § 285, the fee

21   shifting statute entitling the prevailing party in exceptional patent infringement cases to

22   be awarded fees. The district court granted the fees request, and on appeal, the United

23   States Supreme Court vacated and remanded the attorneys' fees award. Id. at 1747-49.

24   However, the Supreme Court was only concerned with whether the case was properly

25   considered an exceptional case under 35 U.S.C. § 285. The Supreme Court did not

26   address, and provided no comment, on the propriety of using the statutory fee shifting

27   authority to award fees in a declaratory relief action based on patent infringement.

28           Like Highmark, Plaintiff Dairies brought this declaratory relief action in response

1  to an action based on federal question jurisdiction, specifically an MPPAA withdrawal

2  liability enforcement action. In the operative complaint, Plaintiffs admitted as such. "An

3  actual controversy has arisen and now exists between the parties and relating to the

4  existence of alleged obligations to make withdrawal liability payments…" (3rd Am.

5  Compl. ¶ 40.) In this Court's summary judgment order, it also found that federal

6  question jurisdiction existed based on the nature of the underlying action for

7  assessment of withdrawal liability against the Plaintiffs. (Order, ECF No. 108 at 15.)

8  Having found the nature of the threated action in this declaratory judgment suit one for

9  withdrawal liability, the Court finds it appropriate to apply the applicable attorneys' fees

10 provisions relating to such actions.

11 **B.    Mandatory Attorney Fees Under 29 U.S.C. § 1132(g)(2)**

12       Under ERISA, the award of attorneys' fees to a pension plan is mandatory in all

13 actions to collect delinquent contributions. 29 U.S.C. § 1132(g)(2); Lads Trucking Co. v.

14 Board of Trustees, 777 F.2d 1371, 1373-1374 (9th Cir. 1985) (citing Operating

15 Engineers Pension Trust v. Beck Eng. & Surveying, 746 F.2d 557, 569 (9th Cir. 1984);

16 Operating Engineers Pension Trust v. Reed, 726 F.2d 513, 514 (9th Cir. 1984); Kemmis

17 v. McGoldrick, 706 F.2d 993, 997-998 (9th Cir. 1983); San Pedro Fishermen's Welfare

18 v. Di Bernardo, 664 F.2d 1344, 1346 (9th Cir. 1982)). This mandatory attorneys' fees

19 provision applies in all actions to collect delinquent contributions owed under § 1145,

20 including actions to collect unpaid employer withdrawal liabilities. Id.

21       As the underlying action is one for collection of withdrawal liability, Defendants

22 assert that the mandatory attorneys' fees provision of 29 U.S.C. § 1132(g)(2) should

23 apply.  Plaintiffs present no legitimate argument to the contrary. Instead, they argue that

24 Defendants are not entitled to attorneys' fees because the arbitrator has yet to

25 determine whether Plaintiffs should be assessed withdrawal liability, and that they have

26 been making interim payments.

27       Section 1132(g)(2) states that "In any action under this title by a fiduciary for or

28 on behalf of a plan to enforce section 515 [29 USCS § 1145] in which a judgment in

6

1  favor of the plan is awarded, the court shall award the plan… reasonable attorney's fees

2  and costs of the action." The question that arises is whether the decision of this Court in

3  favor of Defendant should be considered a judgment under § 1132(g). Plaintiffs contend

4  that there is not a proper judgment with regard to the withdrawal liability claim as the

5  arbitrator has not yet determined whether Plaintiffs owe withdrawal liability.

6        There is little authority on what constitutes a judgment under  § 1132(g). The

7  Court can look to the interpretation of other fee shifting statues to determine if the

8  Defendants were awarded a favorable judgment. "Lower courts in this circuit have,

9  without comment, applied the interpretation of attorney's fees in § 1988 to other fee-

10  shifting statutes" including  § 1132(g)(2). See Trs. of the Constr. Indus. & Laborers

11  Health & Welfare Trust v. Redland Ins. Co., 460 F.3d 1253 (9th Cir. 2006). The

12  Supreme Court has addressed whether a judgment in a declaratory relief action in civil

13  rights litigation is sufficient to find a party to be prevailing, and entitled to attorney's fees.

14  The Court explained:

15        In all civil litigation, the judicial decree is not the end but the means. At the
16        end of the rainbow lies not a judgment, but some action (or cessation of
          action) by the defendant that the judgment produces -- the payment of
17        damages, or some specific performance, or the termination of some
          conduct. Redress is sought through the court, but from the defendant. This
18        is no less true of a declaratory judgment suit than of any other action. The
          real value of the judicial pronouncement -- what makes it a proper judicial
19        resolution of a 'case or controversy' rather than an advisory opinion -- is in
          the settling of some dispute *which affects the behavior of the defendant*
20        *towards the plaintiff.*" 482 U.S., at 761 (emphasis in original).

21  Rhodes v. Stewart, 488 U.S. 1, 3-4 (1988) (citing Hewitt v. Helms, 482 U.S. 755 (1987).

22  "A declaratory judgment, in this respect, is no different from any other judgment. It will

23  constitute relief, for purposes of § 1988, if, and only if, it affects the behavior of the

24  defendant toward the plaintiff." Id. It appears clear in this instance that the judgment of

25  the Court did "affect the behavior" of the parties. The Court determined that Defendants

26  had standing as a plan covered by the MPPAA to assert claims of withdrawal liability

27  against Plaintiffs, and that Plaintiffs' assertion that the lack of certification under state

28  law was not a defense to withdrawal liability. The Court also found that Plaintiffs' state

7

1   law claims were preempted, and that Defendants' counterclaim compelling the parties to

2   arbitrate any remaining disputes regarding withdrawal liability should be granted. Based

3   on the Court's decision, Plaintiffs' claims and defenses presented to this Court were

4   effectively denied. Accordingly, this Court's judgment affected the behavior of the

5   parties.

6          Plaintiffs contend that because the arbitrator has not determined whether

7   Plaintiffs are liable for withdrawal liability, that Plaintiffs are not entitled to attorney fees

8   for this litigation. Whether Defendants are entitled to attorneys' fees for the arbitration

9   proceeding or, for that matter, whether the arbitrator ultimately finds Plaintiff liable for

10  withdrawal liability, are separate inquiries.  As the Court noted in the summary judgment

11  decision, Plaintiffs argued that the terms of the trust agreement regarding the allocation

12  of fees and costs at arbitration were unconscionable. However, as Defendants agreed

13  not to follow the fees provision of the trust agreement, the issue was moot. The terms of

14  the trust agreements did not address fees in federal litigation regarding jurisdictional

15  challenges to withdrawal liability.

16         Finally, Plaintiffs note that in a related proceeding brought by Defendants against

17  a different dairy, the dairy successfully defended against Defendants' claims of

18  withdrawal liability by asserting a latches defense based on Bay Area Laundry & Dry

19  Cleaning Pension Trust Fund v. Ferbar Corp., 522 U.S. 192, 204-205 (1997). (Opp'n,

20  Ex. D, ECF No. 116-1 at 24-26.) Plaintiffs assert that several of them will assert factually

21  similar latches defenses in arbitration and therefore fees in this litigation should not be

22  awarded.

23         As described, success in this litigation and at arbitration are distinct events. Even

24  if several of the Plaintiffs prevail in challenging a finding of withdrawal liability at

25  arbitration, Defendants would remain the prevailing parties of this action. The decision

26  of this Court resolved major disputes between the parties in favor of Defendants. Having

27  entered a judgment favorable to Defendants in this action, the Court finds that

28  Defendants are entitled to mandatory attorneys' fees and costs under 29 U.S.C. §

1132(g)(2).

Having found Defendants eligible for mandatory attorneys' fees under § 1132(g)(2), the Court, in an effort to conserve resources, need not determine if Defendants are alternatively eligible for discretionary fees under § 1451(e).

### C.    Reasonableness of the Fees Requested

To determine the amount of a reasonable attorney's fee, the court must apply a two-step analysis. Gonzalez v. City of Maywood, 729 F.3d 1196, 1202 (9th Cir. 2013). First, the court must determine what constitutes a reasonable fee using the lodestar method. Id. This lodestar figure is calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983). There is a "strong presumption" that the lodestar figure constitutes an appropriate fee award. United Steelworkers of Am. v. Phelps Dodge Corp., 896 F.2d 403, 406 (9th Cir. 1990).

Second, the court may then adjust the lodestar figure upward or downward based on a variety of factors. Gonzalez, 729 F.3d at 1202. In determining the size of an appropriate fee award, the court need not "achieve auditing perfection." Fox v. Vice, 563 U.S. 826, 131 S.Ct. 2205, 2217, 180 L. Ed. 2d 45 (2011). During either of these steps, the court may use estimates and take into account its overall sense of the litigation to determine a reasonable fee. Id.

####         1.    Lodestar Computation

#####             a.    Reasonable Number of Hours

"The prevailing party has the burden of submitting billing records to establish that the number of hours it has requested are reasonable." Gonzalez, 729 F.3d at 1202. The court may reduce the hours "where documentation is inadequate; if the case was overstaffed and hours are duplicated; [or] if the hours expended are deemed excessive or otherwise unnecessary." Chalmers v. City of Los Angeles, 796 F.2d 1205, 1210 (9th Cir. 1986).

Defendants spent 385 hours litigating this matter. They provided a table

9

1   separating the hours spent for each major portion of the litigation in their Points and

2   Authorities. (ECF No. 111 at 13.) Defendants spent 52, 36, and 46 hours respectively

3   filing motions to dismiss to Plaintiffs' original, first, and second amended complaints.

4   123 hours were spent during discovery, 59 hours were spent on the motion for

5   protective order, 40 hours on the motion for summary judgment, and 19 hours on the

6   motion for attorneys' fees. Detailed billing reports appear to accurately reflect that the

7   above totals were spent on each action. (See Kirchner Decl., ECF No. 111-3.) Having

8   reviewed much, if not all, of the prior pleadings and orders in this case, the Court notes

9   that the matter involved complex and novel legal and procedural issues.

10      Moreover, Plaintiffs do not argue that the number of hours expended are

11  excessive or otherwise challenge the time calculations presented by Defendants. The

12  time spent in this litigation appears reasonable; the Court finds that the fee request

13  should be calculated based on the 385 hours Defendants spent on this matter.

14                          b.      Reasonable Hourly Rate

15      The reasonable hourly rate is determined according to "the prevailing market

16  rates in the relevant community," Blum v. Stenson, 465 U.S. 886, 895, 104 S. Ct. 1541,

17  79 L. Ed. 2d 891 (1984), "for similar work performed by attorneys of comparable skill,

18  experience, and reputation," Chalmers v. City of Los Angeles, 796 F.2d 1205, 1210-11

19  (9th Cir. 1986). The relevant legal community "is the forum in which the district court

20  sits." Prison Legal News v. Schwarzenegger, 608 F.3d 446, 454 (9th Cir. 2010) (citation

21  omitted). The relevant community in this case is the Fresno Division of the Eastern

22  District of California.

23      The prevailing party has the burden of producing sufficient evidence that its

24  "requested rates are in line with those prevailing in the community for similar services by

25  lawyers of reasonably comparable skill, experience and reputation." Blum, 465 U.S. at

26  895 n.11; accord Gonzalez, 729 F.3d at 1206. Defendants' counsel seeks hourly rates

27  for both George Kraw and Donna Kirchner of $325 an hour. Mr. Kraw has 38 years of

28  legal experience and has represented health plans for over 23 years. (Kraw Decl. at ¶

10

1    2.) Ms. Kirchner has 27 years of legal experience. (Kirchner Decl. at ¶ 6.) Katherine

2 McDonough has 14 years of experience requests a billable rate of $275 an hour.

3 (McDonough Decl. at ¶¶ 2-3.) Other attorneys that assisted with the matter had less

4 than ten years of legal experience and billed at $225 an hour. (Id. at ¶ 3.) Paralegals

5 billed at $125 an hour. (Id.)

6    The Court now turns to an examination of rate determinations in other cases

7 before this Court. In determining the relevant rate within the Eastern District of

8 California, courts have found that $375.00 per hour is the top range for a senior lead

9 attorney practicing in the Fresno area. Luna v. Hoa Trung Vo, No. 1:08-cv-01962-AWI-

10 SMS, 2011 U.S. Dist. LEXIS 56427, 2011 WL 2078004, at *5 (E.D. Cal. May 25, 2011)

11 (attorney with more than 40 years' experience and specializing in disability related

12 litigation); see also Joe Hand Productions, Inc. v. Garl, 2013 U.S. Dist. LEXIS 125613,

13 2013 WL 4736826, at *3 (E.D. Cal. Sept. 3, 2013) ($350.00 per hour is reasonable

14 hourly rate for very experienced and skilled trial attorney within the Fresno Division of

15 the Eastern District and awarding attorney with twenty years' experience $350.00 per

16 hour); Williams v. Ruan Transport Corp., No. 13-cv-01157-LJO, 2013 U.S. Dist. LEXIS

17 176327, 2013 WL 6623254, at *6 (E.D. Cal. Dec. 16, 2013) (Court awarded $375.00 per

18 hour to attorney with over thirty years of experience and $325.00 per hour to attorney

19 with fifteen years of experience in employment action).

20    Courts in the Fresno Division have found that the reasonable hourly rates for

21 competent attorneys with less than ten years of experience are $250 to $300 per hour.

22 White v. Rite of Passage Adolescent Treatment Centers and Schools, No. 1:13-cv-

23 01871-LJO-BAM, 2014 U.S. Dist. LEXIS 20697, 2014 WL 641083, at *5 (E.D. Cal. Feb.

24 18, 2014) (awarding $300.00 per hour for counsel with six years of experience in

25 representation action under the California Private Attorney General Act of 2004); see

26 Jones v. Lehigh Southwest Cement Co., Inc., No. 1:12-cv-00633-AWI, 2014 U.S. Dist.

27 LEXIS 11771, 2014 WL 346619, at *6 n.3 (E.D. Cal. Jan. 30, 2014) (awarding $280.00

28 and $215.00 per hour in employment action);  Ramirez v. Merced County, No. 1:11-cv-

1  00531-AWI-DLB, 2013 U.S. Dist. LEXIS 127026, 2013 WL 4780440, at *9 (E.D. Cal.

2  Sept. 5, 2013) (awarding $350.00 per hour to attorney with more than 30 years of

3  experience and $250.00 for attorney with 14 years of experience); Jadwin v. County of

4  Kern, 767 F.Supp.2d 1069, 1134 (E.D. Cal. 2011) (awarding hourly rates of $350.00 for

5  attorney with 14 years of experience, $275.00 for attorney with 11 years of experience,

6  and $295.00 for contract attorney with 18 years of experience in employment action).

7      Defendants' counsel billed at rates found to be reasonable in this district. The

8  court also finds the hourly rate of $125 reasonable for paralegal work performed on this

9  matter.

10     Based on the above determination of billable rates and time worked, the Court

11 finds that Defendants are entitled to $110,730.92 in fees based on the 385.2 hours

12 worked at the billable rates discussed above.

13         2.      Adjustments to the Lodestar

14     Defendants' counsel do not seek an adjustment or multiplier to the lodestar

15 amount. Nor do Plaintiffs' counsel argue that the fee request should be reduced. The

16 Ninth Circuit has held that the court "may not attempt to impose its own judgment

17 regarding the best way to operate a law firm, nor to determine if different staffing

18 decisions might have led to different fee requests." Moreno v. City of Sacramento, 534

19 F.3d 1106, 1115 (9th Cir. 2008). "The difficulty and skill level of the work performed, and

20 the result achieved - not whether it would have been cheaper to delegate the work to

21 other attorneys - must drive the district court's decision." Id.

22     The Court's task is to evaluate the reasonableness of the time expended by the

23 billing attorney, not assess whether another attorney could have completed the task for

24 the same or less expense. For the reasons previously discussed, and because of the

25 strong presumption that the lodestar figure constitutes an appropriate fee amount, the

26 Court concludes that no further adjustment to the lodestar is warranted.

27     **D.    Costs Requested**

28     Defendants request reimbursement for $970.76 dollars in costs. Plaintiffs have

1  not challenged these costs. The costs relate to service fees and two hotel stays in

2  Fresno by Defendants' counsel. Section 1988 "allows for recovery of reasonable out-of-

3  pocket expenses," including travel costs, so long as they were "reasonably expended."

4  Woods v. Carey, 722 F.3d 1177, 1180 (9th Cir. 2013). The Court finds that the costs are

5  also appropriate in this ERISA withdrawal liability action. See Trs. of the Constr. Indus.

6  & Laborers Health & Welfare Trust v. Redland Ins. Co., 460 F.3d 1253 (9th Cir. 2006).

7  Accordingly, Defendants are entitled to costs in the amount of $970.76.

8  **IV.    ORDER**

9      It is hereby ORDERED that Defendants' motion for attorneys' fees is GRANTED.

10  Plaintiffs are directed to pay $110,730.92 in fees and $970.76 in costs to Defendants

11
12  IT IS SO ORDERED.

13      Dated:    __March 4, 2016__              /s/ *Michael J. Seng*

14                                   UNITED STATES MAGISTRATE JUDGE

15  .